CITY OF BOSTON *vs.* BOSTON PORT DEVELOPMENT COMPANY.

Suffolk.    October 9, 1940. — January 6, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Tax,* On real estate: assessment, demand, sale, flats; Exemption. *Flats. Evidence,* Letter.

Evidence that a collector of taxes mailed, postage prepaid with a return address on the envelope, a demand addressed to the taxpayer, a corporation, care of its treasurer, at a street address which was not that of the corporation but was a mailing address of persons who were its treasurer and directors, and that the letter was not returned to the collector, and an affidavit by the collector under G. L. (Ter. Ed.) c. 60, § 1, warranted inferences that the demand actually was received by the taxpayer and that the inaccuracy in the address was not substantial nor misleading; and, under § 37, a tax title based on such demand was not invalid because of the inaccuracy.

Evidence did not show that a separate assessment of several parcels, some of them flats, resulting from the assessors' subdividing a tract of land in accordance with a plan on file in their office, was arbitrary or invalid.

Descriptions, with references to plans, of certain of many parcels of land of a taxpayer included in a published notice of a tax sale could not be said to be insufficient in the circumstances.

Flats, except certain flats of the Commonwealth, are not exempt from taxation.

PETITION, filed in the Land Court on December 9, 1938, to foreclose rights of redemption from tax titles.

The case was heard by *Fenton,* J.

*H. H. Ham,* (*K. L. Pease* with him,) for the respondent.

*S. S. Dennis,* Assistant Corporation Counsel, (*M. Corman* with him,) for the petitioner.

DOLAN, J.  This is a petition to foreclose rights of redemption under certain tax titles, acquired by the petitioner in 1934, for nonpayment of the real estate taxes assessed for the year 1932 on ten parcels of real estate, of which the respondent was then and is now the owner of record.  The case comes before us on the appeal of the respondent from the decision of the judge in which he ruled that the tax titles are valid, and ordered that the case stand for further hearing on the matter of redemption.

The first ground upon which the respondent bases its contentions that the tax titles involved are not valid is that no proper demand was made as required by G. L. (Ter. Ed.) c. 60, § 16.  The material facts found by the judge which bear on this subject matter are these:  The lands involved were acquired from the East Boston Company in 1928.  In that year the East Boston Development Company was formed but almost immediately thereafter its name was changed to Boston Port Development Company.  The address of the respondent and of its treasurer, Charles H. Gifford, for the year 1933 was "1 Court Street, Boston, Mass."  Gifford was also a director of the East Boston Company whose address during that year was "89 Broad Street, Boston, Mass."  The demand for payment of the amount due on the ten parcels of land was sent out by mail on July 3, 1933, by the then acting deputy collector, now chief deputy collector, of taxes for the city of Boston (John J. Connors), in a "window envelope" bearing a return address to which the demand, if undelivered, would be returned.  A single demand for the ten parcels with the total amount due for all the parcels stated on its face and a statement of the amount due on each individual parcel set forth on its back, was mailed addressed to "Boston Port Development Company, c/o Charles H. Gifford, President, 89 Broad Street, Boston, Mass."  This address was obtained from a card which was on file in the tax collector's office bearing the notation, "East Boston Co., c/o Chas. H. Gifford, Pres., 89 Broad, Room 722" (Exhibit 2A).  There was another card on file there which had at the top the notation "East Boston Co., Jos. Weeks, 16 State St." and below, opposite

1929, the words "East Boston Development Co." written in ink in the first column, and in the next column, above these words, "90 Ames Bldg., Court St., Charles H. Gifford, treas.," written in pencil (Exhibit 2B). The address "90 Ames Bldg., Court St." is in fact 1 Court Street. These cards were the only sources of information for the addresses on file in the collector's office, and there was no record there that showed the change of name from East Boston Development Company to Boston Port Development Company or any card bearing the name of Boston Port Development Company, nor was there any information sent to the collector's office concerning the change of name. The usual practice in the collector's office if a demand came back as undelivered was to make a notation in the demand book, "by posting and mailing copy postpaid addressed to Boston, Mass.," and where a demand did not come back to make a notation in the demand book, as there was in this case, "by mail postpaid to place of business."

If the envelope containing the demand was not delivered, it would have been returned to Connors. It was not returned to him, and, accordingly, he prepared the information with reference to mailing the demand for the affidavit of another deputy collector. This affidavit in turn became the basis for that of the collector. In each affidavit it is stated that demand was made by mailing postpaid as hereinbefore set forth. The collector knew that the address of the respondent was "1 Court Street, Boston."

The judge further found that the demand was not returned to the tax collector, and inferred and found that it was received by Gifford "who had charge of paying the taxes" of the respondent, "that when he received it he knew it was a demand on the . . . [respondent] for the payment of taxes assessed to it; that . . . [the respondent] was not substantially harmed or misled," and ruled that the error or irregularity in the demand did not invalidate the tax titles.

The respondent contends that this conclusion of the judge is plainly inconsistent with the subsidiary facts found by him. We do not sustain this contention. The appeal

brings before us only questions of law apparent on the record. Findings of fact cannot be revised and must be accepted as true. If, upon all the facts thus displayed and the reasonable inferences of which they are susceptible, the ultimate finding is justified as matter of law, it must stand. *Horowitz* v. *Peoples Savings Bank*, 307 Mass. 222. It is true that there was an irregularity in the service of the demand. Under G. L. (Ter. Ed.) c. 60, § 16 (see now St. 1933, c. 168, § 1; c. 254, § 51), it is required that the demand be made by the collector by mailing it "to the last or usual place of business or abode, or to the address best known to him." But under § 37 it is provided in part that "No tax title shall be held to be invalid by reason of any errors or irregularities in the proceedings of the collector which are neither substantial nor misleading," and by § 1 it is provided that "The affidavit of the collector . . . [or] deputy collector . . . serving the . . . demand . . . shall be kept on file in the office of the collector, and shall be prima facie evidence that the same was so served." It has been held that where a letter irregularly addressed could be found to have been received by the proper person, that is sufficient. *Lynn* v. *Lynn Commercial Realty Co.* 286 Mass. 368, 370. *Kenney* v. *Boston Mutual Life Ins. Co.* 306 Mass. 282, 285. See also *Fall River* v. *Conanicut Mills*, 294 Mass. 98, 99, 100. The placing of the notice of demand in the mail is *prima facie* evidence that it was received by the addressee. *Kenney* v. *Boston Mutual Life Ins. Co.* 306 Mass. 282, 285. In the instant case the envelope containing the demand was not returned to the collector. The address 89 Broad Street, as found by the judge, was that of the East Boston Company, of which Gifford was a director. Three directors of the respondent also had addresses there when the demand was mailed. In all the circumstances we think that it cannot be said as matter of law that the inference drawn by the judge that the demand was in fact received by the respondent's treasurer was not a reasonable inference from the facts found, or that his finding that the respondent was not substantially harmed or misled by the irregularity in the demand, is error of law apparent on the record.

The next ground of objection relied upon by the respondent is that the assessment of the taxes was invalid because of improper and arbitrary subdivisions of land by the assessors in connection with parcels 1 to 8 inclusive. The contention of the respondent in this respect is in effect that the assessors were without authority to make the subdivision in accordance with a set of plans on file in their office, by which the respondent argues it was not bound.

The parcels of land involved are part of a large tract of land owned by the respondent. Parcels 1, 2 and 3 lie below high water mark and are classed as flats. The assessors in making all assessments for taxes for the year 1906 and in all subsequent years, with reference to lots 1 to 8 inclusive, followed the descriptions shown on a plan denoted in the assessments as the "E. W. Adams" plan on file in the assessors' office. A set of plans was and is on file in the assessors' office entitled "East Boston Company, Edward P. Adams, C.E.," on which may be found parcels 1 to 8 inclusive. The other two parcels may be found on a plan of Parkway lands owned by the East Boston Company by F. O. Whitney, C.E., which is recorded with Suffolk County registry of deeds. A letter of E. P. Adams attached to the Adams plan, addressed to an assessor, was received in evidence to show how and when that plan came into the possession of the assessors, but not to prove agency or to show that Adams had authority to bind the East Boston Company. All taxes due the petitioner on all ten parcels for the years prior to 1932 were paid without objection either by the East Boston Company or by the respondent.

The judge ruled that "the assessment was not illegal because of any improper or arbitrary division by the assessors into lots because the Edward P. Adams plan was filed in the assessors' office by the predecessor in title of the Boston Port Development Company, the East Boston Company; taxes had been assessed in accordance with said plan on these parcels since 1906; and all taxes due the city of Boston for the years prior to 1932 had been paid without objection by either the East Boston Company or the Boston Port Development Company."

There is no statutory definition of the lot or parcel of land that is the lawful unit for the creation of a tax. Contiguous parcels of land, though divided upon a plan for purposes of sale, may often be assessed as a unit. *Marlborough* v. *Poorvu*, 305 Mass. 124, 125, and cases cited. In like manner contiguous parcels of land owned by the same person may be assessed as a unit. *Franklin* v. *Metcalfe*, 307 Mass. 386, 390. But the several lots or parcels may also be assessed separately. The question whether the method of assessment is reasonable is in each case largely a question of fact for the judge. In the light of the specific findings upon which he based his conclusion, entirely apart from his use of the Adams letter for a purpose for which it was not admitted in evidence, we are of opinion that no reversible error of law appears on the face of the record, with reference to this subject matter. The assessment according to the plan on file in the assessors' office was sufficient. See *Larsen* v. *Dillenschneider*, 235 Mass. 56, 57.

The respondent also grounds its objection to the validity of the tax titles upon assertions that the descriptions of parcels 1 to 9 in the notices of tax sale were insufficient, and that the description in the tax deed of parcel 2 was insufficient. Material findings of the judge bearing upon these contentions follow. The notices of sale were published in the City Record on August 11, 1934. In the notice the parcels involved were not grouped but were listed separately, as were other parcels owned by the respondent not here in issue. With respect to lots 1, 3, 4, 5, 6, 7 and 8, in some instances there is a reference to the E. W. Adams plan on file in the assessors' office, while in others the reference is to "same plan." Where reference is made in the notice as to any of parcels 1 to 8 to "same plan" the original notice which is before us discloses that preceding descriptions of other parcels not in dispute refer to the Adams plan. The description of parcel 9 referring to "same plan" is immediately preceded by a description of another parcel, then owned by the respondent, in which reference is made to the F. O. Whitney plan. In each case other descriptive bounds are set forth.

Parcel 2 is described in the tax deed as follows: "Parcel 2. About eighty thousand eight hundred fifty (80,850) square feet of land on the southwesterly side of Swift Street, making the southerly corner of Gosnold Street, extending to and making the westerly corner of Shrimpton Street, adjoining another estate now or formerly of said Boston Port Development Company (Mass. Corp.)." Recorded in Book 5479, Page 155. The judge found that the description in the notices of sale, reading that part of the notice that concerned lands of the respondent, was sufficient to identify properly the premises, and sufficiently accurate to enable the owner or the public to identify them, and that the information given was adequate, so that owners and prospective bidders could have located them with substantial certainty. He also found that the description in the tax deed of parcel 2 was not insufficient.

The general principle is that the description in the notice and deed must be a substantially accurate one; it is enough if it fairly designates the property for the information of those interested. *Franklin* v. *Metcalfe*, 307 Mass. 386, 389, and cases cited. G. L. (Ter. Ed.) c. 60, § 40. Ordinarily the question whether the description is sufficient is a question of fact for the judge. *Boston* v. *Lynch*, 304 Mass. 272, 275. Upon the facts found by the judge and the reasonable inferences of which they are susceptible, no error of law appears in his conclusion that the descriptions in question were substantially accurate.

The respondent's only other ground of objection is that the assessments of parcels 1, 2 and 3 were illegal "on account of the fact that each of said parcels is land located between high water and low water, generally called flats." The judge ruled that these parcels were not exempt from taxation. The respondent concedes that it owns the fee in the flats in question, but argues that the land is held under so many restrictive conditions that its ownership is illusory, urging that since the land is under water twice daily and the public has rights of navigation, fishing and fowling therein, and no structures can be erected, nor excavations made upon the flats, without the permission of both State

and Federal authorities, the granting of which lies in their discretion, it is owner in name only and that the parcels are exempt from taxation.

It is settled, however, by the Colony ordinance 1641–7 that the owner of uplands bounding on the sea has an estate in fee in the adjoining flats above low water mark and within one hundred rods of the upland, subject, however, to the reasonable use of other proprietors and of the public for the purposes of navigation, fishing and fowling, and subject also to such restraints and limitations of the proprietor's uses, including those of erecting wharves and other buildings thereon, as the Legislature may see fit to impose for the preservation and protection of public and private rights. *Commonwealth* v. *Alger*, 7 Cush. 53. *Commonwealth* v. *Roxbury*, 9 Gray, 451. The owner of the upland and shore property may convey one and retain the other, or may convey each independently. *Henry* v. *Newburyport*, 149 Mass. 582. *Castor* v. *Smith*, 211 Mass. 473. "Except as against public rights, which are protected for the benefit of the people, the private ownership is made perfect." *Butler* v. *Attorney General*, 195 Mass. 79, 83. This court has heretofore, in many cases, and at some length, considered the various incidents of ownership of shore property and pronounced it to be ownership of a substantial nature. See *Commonwealth* v. *Roxbury*, 9 Gray, 451, and note at pages 518, 519, 520, and cases cited; *Jubilee Yacht Club* v. *Gulf Refining Co.* 245 Mass. 60, 63. It is established that the ownership by the respondent of the fee in the flats involved is of a substantial nature.

All real property in this Commonwealth, unless expressly exempt, is subject to taxation under G. L. (Ter. Ed.) c. 59, § 2. By § 5, Second, it is provided that there shall be exempt from taxation "Property of the commonwealth, except . . . lands in Boston known as the commonwealth flats, if leased for business purposes"; and by § 11 that "Taxes on real estate shall be assessed, in the town where it lies, to the person who is either the owner or in possession thereof on April first." (See now St. 1933, c. 254, § 29; St. 1936, c. 92; St. 1939, c. 175.) The only references to

flats in § 5, Second, are to Commonwealth Flats in Boston if leased for business purposes, and to lands and flats lying below high water mark in Provincetown Harbor belonging to the Commonwealth and occupied by private persons by license of the department of public works, together with all wharves, piers and structures thereon that have been built subsequently to a certain date, and those that may thereafter be built in conformity with permits or licenses granted by that department. As to these latter flats, under § 5 it is provided that such lands shall be taxed to the persons holding such permits or licenses.

By St. 1909, c. 490, Part I, § 12 (not incorporated in General Laws because deemed a special act, *Grasselli Chemical Co.* v. *Assessors of Boston*, 281 Mass. 79, 81) it is provided that the Commonwealth Flats, so called, in Boston, shall, if leased for business purposes, be taxed to the "lessees thereof, respectively, in the same manner as the lands and buildings thereon would be taxed to such lessees if they were the owners" thereof. In the case just cited it was held that the tract (flats) assessed was not exempt from but subject to taxation, and that taxes on real estate may be assessed to the person who is in possession thereof on the date fixed for assessment, as well as to the owner at that time. G. L. (Ter. Ed.) c. 59, § 11. Since there is no express exemption from taxation in the statutes of flats other than those owned by the Commonwealth not leased, permitted or licensed for use by others, it is obvious that there is no express exemption of the respondent's flats from taxation. That the use of such lands held by the respondent is subject to regulation by State and Federal authorities does not operate to exempt them from taxation. It has already been pointed out in very many decisions of this court that, while the Legislature may impose such restraints and limitations on the use of flats by their proprietors, yet the ownership is one of a substantial nature and, except as against public rights which are protected for the benefit of the people, the private ownership is perfect. In the imposition of restraints and limitations upon the use of flats by their proprietors it is to be assumed that public

officers will conduct themselves fairly.   It is not to be assumed that they will abuse their power or act in bad faith.   See *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 541;  *Broderick* v. *Department of Mental Diseases*, 263 Mass. 124, 128.   The case of *Lancy* v. *Boston*, 186 Mass. 128, relied upon by the respondent, is plainly distinguishable in its facts from the present case.

The ruling of the trial judge that parcels 1, 2 and 3 are not exempt from taxation was right.   No question is raised by the respondent's requests for rulings which were denied by the judge that is not disposed of by what has been said.

*Decision affirmed.*