**24**

**CONSOLIDATED URANIUM MINES,**
Inc., a corporation, Plaintiff,

v.

Frank MOFFITT, Treasurer of Emery County, State of Utah, and Emery County, a body corporate and politic of the State of Utah, Defendants.

No. C-78-57.

United States District Court
D. Utah,
Central Division.

Nov. 1, 1957.

Fred H. Evans, Salt Lake City, Utah, for plaintiff.

John G. Marshall, Salt Lake City, Utah, Mack Bunderson Emery County Attorney, Castle Dale, Utah, for defendants.

CHRISTENSON, District Judge.

This suit involves the validity of an assessment by the State of Utah of ad valorem taxes for the years 1955 and 1956 upon interests in mining properties situate in the Temple Mountain Mining District, State of Utah.

Plaintiff, Consolidated Uranium Mines, Inc., during time relevant to this case, was lessee of certain unpatented mining claims. It operated these claims through others whose relationship to the plaintiff, not deemed material here, was considered in Consolidated Uranium Mines, Inc. v. Tax Commission, 4 Utah 236, 291 P.2d 895. Consolidated was assessed and, in addition to other taxes concerning which no question is raised, it paid under protest to the defendant Treasurer of Emery County, Utah, $34,604.30 in ad valorem taxes which it seeks to recover, with interest and costs, by this suit. A written stipulation, incorporated herein by reference as the Court's findings of fact, establishes the controlling circumstances in the record without dispute.

The following questions of law are presented:

1. Whether the State of Utah had power to impose ad valorem taxes upon mining claims or possessory interests therein.

2. Whether the statutes relied upon by the defendants as a basis for the assessments in question constitute a proper exercise of such power, if any.

3. Whether such taxes were validly assessed (a) against a taxable interest in real property; (b) by a sufficient description in the notices of assessment; and (c) in the name of the proper person.

4. Whether the taxes were unlawful so as to permit their recovery under Section 59–11–11, Utah Code Annotated, 1953.[1]

Plaintiff questions the State's power to levy the taxes on several theories. It is suggested that they constitute an attempted taxation of mining claims; that, as such, the subject of the tax is the mineral in place and that the United States has specifically reserved title to all of the minerals in the public domain. 30 U.S.C.A. § 21. Under paragraph second of Section 3 of the Enabling Act, it is argued, the power to tax public

---

1. "59–11–11. Payment under protest—Action to recover. In all cases of·levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in any court of competent jurisdiction against the officer to whom said tax or license was paid, or against the state, county, municipality or other taxing unit on whose behalf the same was collected, to recover said tax or license or any portion thereof paid under protest."

lands cannot be enlarged by statute or constitutional provision. Plaintiff further contends that the tax involved here is really a tax on the fee interest which is vested in the United States, contrary to the Enabling Act and Section 59–2–1, Utah Code Annotated 1953, prohibiting the taxation of property of the United States.

■ The several states have the right to subject unpatented mining claims or possessory rights therein of persons other than the United States to ad valorem taxation. Taxation of a mining claim, even though unpatented, is taxation of a possessory right asserted not by the United States but by others not immune from taxation. It does not amount to taxation of the minerals in place as such, nor does it amount to the taxation of a fee simple title. The distinction between taxing interests in lands exempt from taxation and other interests in the lands not exempted is touched upon in State v. Salt Lake County, 96 Utah 464, 85 P.2d 851. The power of the states to reach by taxation the possessory interests of occupants or claimants not exempt from taxation has been authoritatively sustained. Forbes v. Gracey, 94 U.S. 762, 24 L.Ed. 313; Elder v. Wood, 208 U.S. 226, 28 S.Ct. 263, 52 L.Ed. 464; see also American Smelting and Refining Company v. Whatcom County, 13 Wash.2d 295, 124 P.2d 963.

■ Under the laws of Utah, the terms "real estate" and "land" include possessory rights in, or claims to, land. Utah Code Annotated 1953, 59–3–1(2) (a), 68–3–12(10). A mining claim is a possessory right and is real estate under the statutes of the State of Utah. Lavagnino v. Uhlig, 26 Utah 1, 71 P. 1046, 99 Am.St.Rep. 808, affirmed 198 U.S. 443, 25 S.Ct. 716, 49 L.Ed. 1119. As taxable property, possessory interests in mining claims are subject to taxation. Article XIII, section 2 of the Constitution of the State of Utah provides that "All tangible property in the state, not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. * * *" Article XIII, section 3 of the State Constitution states that "The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all tangible property in the State * * *." Article XIII, section 4 of the Constitution of the State of Utah provides, among other things, that all metalliferous mines or mining claims, both placer and rock in place, shall be assessed as the Legislature shall provide. Section 59–5–57, Utah Code Annotated 1953, as amended, provides, "All metalliferous mines and mining claims, both placer and rock in place, * * *" shall be assessed at $5 per acre and in addition thereto at a value equal to two times the average net annual proceeds thereof for the three calendar years next preceding or for as many years next preceding as the mine has been operated, whichever is less.

The Court concludes not only that the State has the power to tax possessory interests in unpatented mining claims of individuals but that the laws of the State of Utah contemplate and provide for the taxation of such interests. Pleasant Valley Coal Company v. Carbon County, 81 Utah 14, 51 P.2d 712; Utah Code Annotated 1953, 59–5–57 as amended.

In addition to questioning that the taxes were assessed against a taxable interest pursuant to lawful authority, the validity of their assessment has been questioned on the grounds that they were assessed in the name of the plaintiff lessee rather than in the names of the locators of the claims.

■ The plaintiff was in possession of the property as lessee and operator of said claims (see Consolidated Uranium Mines, Inc. v. Tax Commission, supra). It paid the taxes under protest not only in behalf of itself but "on behalf of the owners of said property as their agent and representative." The State statute makes real property assessable to the person by whom it is owned or claimed, or in whose possession or control it is, and provides that no mistake in the name

of the owner or supposed owner renders the assessment invalid. Utah Code Annotated 1953, 59–5–4. The plaintiff, as lessee, made the returns required by Utah Code Annotated 1953, 59–5–60, on the basis of which the amounts of the assessments were determined. There has been no question raised as to the amounts of the assessments as such. If payment of taxes by an agent inures to the benefit of the owner, as is held in another connection in Cooper v. Carter Oil Co., Utah, 316 P.2d 320, payment by an agent for itself and the owners should not be recoverable solely upon the ground that the agent in possession, who is also lessee, rather than the owner, was assessed. Moreover, the possessory interest reached by the assessment was at least as much that of the plaintiff as it was the residuary interest of the owners. I conclude that the assessments of the taxes in the name of the plaintiff did not render the assessments unlawful or invalid, nor make their payment recoverable. See 3 Cooley on Taxation, § 1096; Jones v. Box Elder County, 10 Cir., 1931, 52 F.2d 340.

A more serious question arises from the descriptions under which the property was assessed.

Following its exploratory activities on the leased claims, plaintiff grouped portions of them into "production units," giving a name to each unit. The names of some units closely approximated the names given to the mining claims forming a part of the respective units, while others did not. The boundaries of the units did not coincide with the boundaries of any particular claims and the units did not cover all of the claims.

Beginning with the year 1955, the State Tax Commission began to assess for purposes of ad valorem taxation the possessory rights in the unpatented claims covered by the lease by virtue of Sections 59–5–57 to 65, incl., Utah Code Annotated 1953, as amended. As noted above, these sections in effect provide for a tax based upon a valuation of $5 per acre of the claims and a percentage of the net proceeds derived from the opera-

tion of any mines thereon. However, no assessment was made on the $5 per acre basis, the entire assessment being founded upon the net proceeds derived from the operation of the mines on the leased claims as reported by plaintiff. Thus, it will be seen that the amounts of the assessments were not dependent upon the number, location, or identities of the claims, or any part of them as such, but were dependent solely upon the net proceeds derived through the mines in operation thereon.

The assessment notices sent to Consolidated Uranium Mines, Inc. described the taxes as being imposed upon:

"* * * mining rights in the group of unpatented mining claims, A.E.C. Nos. 1, 2, 2A, 3, 4, 5, 6, 8, 9, and 10, and North Mesa Nos. 2, 9 and 10, Marchbanks, Fumerol & Rex, located within what is generally known as the Temple Mountain Mining District, Emery County, Utah."

Included in plaintiff's lease were several numbered claims designated "Rex" and "Fumerol" respectively, and a large number of other claims not referred to even generally in the notices of assessment. In addition to the units described in the assessment notices as A.E.C. (1 to 10), were several other units appearing on the plat attached to the stipulation of the parties, such as "Camp Bird Lease," "North Mesa 9," etc. It does not appear whether all of the production reported by plaintiff for tax purposes was upon the units described in the assessment notice, or whether they included production on other units outlined on said plat.

It is the general rule that there cannot be a lien or valid proceeding for the forfeiture or sale of land for the nonpayment of taxes if the assessment roll or book does not contain such a description of the particular land intended to be assessed that it can be identified with certainty and beyond any reasonable possibility of doubt or mistake. 84 C.J.S. Taxation § 467, pp. 898 et seq. In the case of Eastman v. Gurrey, 15 Utah 410, 49 P. 310, 311, the assessment of land by referring to the dimensions of a por-

tion of a particular lot without a further definition of the portion which was intended, was held to be insufficient, the Court saying:

> "If the whole lot is assessed, it is sufficient to describe it by number and block; but, when only a portion of the lot is assessed, it should be described with reasonable certainty, so that the owner will know what land is assessed."

█ In Tintic Undine Mining Co. v. Ercanbrack, 93 Utah 561, 74 P.2d 1184, for cumulative reasons involving incorrect descriptions and discrepancies in the assessment and other notices in connection with a tax sale of patented mining claims, together with errors in the names of the owners which correctly appeared of record in the County Recorder's office, a tax sale was held to be invalid. The case did not turn upon the interests of parties in possession and operation of any mines, nor did it involve the basis of tax with which our case is concerned, and for these and other reasons apparent from the decision, I do not consider that it militates against the conclusion reached above as to the name in which the assessment in question was noticed. Concerning the matter of descriptions, however, the decision lays down the general rule that where realty is assessed or sold for taxes, the description must be definite enough so that the owner will know what property is being sold and the prospective purchaser will know what property he could buy so as to determine its value. This case involved the validity of a tax sale, which problem fully invoked the general rule therein expressed. It seems inescapable that the same rule would not apply with strictness when a question arises in the entirely different context of a tax paid under protest, whereby the necessity of a sale is precluded, and where the amount of the tax, as here, bore no relationship to any particular description but simply to the production of mines generally located upon the property. Nonetheless, even as to the ordinary assessment made in respect of the quantity of land assessed, the rule as to descriptions is not absolute, but is one of reasonableness under the particular circumstances.[2] It is not reasonable in this case that the claimed errors in the description, which were non-prejudicial, should invalidate the assessments for the purpose of permitting a recovery of the taxes, whereas, substantial errors, had there been no payments, would not have prevented their later collection by the taxing unit, as is pointed out in Tintic.[3] 74 P.2d at pages 1190–1191.

█ It is undisputed that the claims on which the production units were located were the only claims operated by Consolidated in the Temple Mountain Mining District, that the assessment

---

2. It is stated 74 P.2d on page 1189 of this decision:
   " * * * By what is here said, we do not hold that in every case any one of the irregularities appearing in this record and set forth above and numbered from (a) to (k), inclusive, renders a tax sale void. We have set them forth as indicating many of the irregularities which assessors and other taxing officials through misunderstanding or carelessness allow to creep into their records and proceedings. What may in one case be a mere irregularity may in another case, due to the particular facts, assume more significance and even void a sale. * * * "
   See also City of Boston v. Boston Port Development Co., 308 Mass. 72, 30 N.E. 2d 896, 133 A.L.R. 515.

3. " * * * The descriptions being fatally defective, the sale was and is void. We may add that the voiding of a sale does not relieve the land from taxes. Under the statute, if an assessment is erroneous or defective, the treasurer should not sell the property, but report the fact and the Board of County Commissioners must cause the assessor to enter the uncollected taxes upon the assessment book of the next succeeding year, on the basis of the valuation and rates of the year for which they were erroneously assessed, to be collected as other taxes are collected thereon. R.S. 1933, 80–10–30. This protects the interest of the taxing bodies in their revenue and safeguards the owners in their property rights."

figures were derived from information submitted by Consolidated with reference to no specific claims or production units, and that the amounts of the assessments bore no relationship to the specific identities or location of any claims. Under these circumstances, it is believed that the descriptions for all practical purposes were sufficient to reasonably acquaint interested parties with the property assessed. The amount of the assessments would have been the same irrespective of what claims or units were described in the notices, and there has been no showing made, or claim asserted by the plaintiff, who should be deemed to have the burden of proof in this respect, that the units and claims described in the notices did not include all the operating mines the net returns of which determined the amounts of the assessments in question. There is no showing, either, that plaintiff, or anyone else, questioned in any way the amounts, as such, of the assessments finally made by the taxing officials after they had received plaintiff's returns and made certain adjustments in amount at plaintiff's request. The reasonableness of these amounts are not in question.

If it be argued that even though plaintiff paid the tax and it might otherwise be held unrecoverable from the county, it may have the right to an adjustment between it and its lessors and for this purpose it is entitled to know what specific claims are assessed and in what amounts, since the claims are owned in severalty, a complete answer appears to be this: Were the claims specifically described by name, a breakdown of the taxes among the owners or an allocation of the taxes among the claims would have been even less feasible because, as noted above, the determination of the amount of taxes was based upon production from the mines not situated according to the individual claims and unrelated to their area, description or location. Furthermore, as pointed out above, there is no proof that all of the production did not occur on the very units and claims specifically set out in the notices of assessment.

There is the circumstance, significant too in this connection, that the returns upon which the assessments were based were made by Consolidated without reference to the claims and without allocation or breakdown among them or among the production units. This, and the other facts recited in the stipulation should estop it from now questioning the sufficiency of the descriptions. In a sense, it made its return en masse. See 51 Am.Jur., Taxation, § 688, p. 643. In Centennial Eureka Min. Co. v. Juab County, 22 Utah 395, 62 P. 1024, it is indicated generally that it is not necessary to inform the Tax Collector of the reason for the payment under protest since an official is bound to take notice of his want of authority, and no estoppel could arise from failure of the taxpayer to specify what it was the duty of the officer to know. There was a complete lack of power to make the assessment under the law as it existed at the time the Juab County case arose.

There are other circumstances and other principles involved here. If plaintiff could pay for itself as the one in possession, as well as for the owners as their agents, even under protest, assessments based upon its own returns and thus obviate any occasion on the part of the county to correct its record until it became too late to otherwise collect the taxes, and then without showing any prejudice from the manner of the description could recover the taxes so paid, an unreasonable precedent for general tax avoidance would be established.

I conclude that the levies and collection of the taxes in question, by virtue of powers vested in the several states and under the tax laws of the State of Utah, were not unlawful within the contemplation of Section 59–11–11, Utah Code Annotated 1953, authorizing payment of unlawful taxes under protest and their recovery from the county thereafter.

Judgment should be entered in favor of the defendants and against the plaintiff on plaintiff's complaint, "No cause of action" with costs to defendants, and the clerk of this court is hereby directed to enter judgment accordingly.