## CITY OF AUGUSTA

v.

## Guy R. ALLEN et al.

Supreme Judicial Court of Maine.

Argued Nov. 5, 1981.

Decided Dec. 18, 1981.

1. Section 2114 was amended by P.L. 1981, ch. 487, eff. Jan. 1, 1982.

Sanborn, Moreshead, Schade & Dawson, Charles E. Moreshead (orally), Augusta, for plaintiff.

Law Offices of Gregory J. Farris, Mark E. Susi (orally), Gardiner, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, CARTER and VIOLETTE, JJ.

McKUSICK, Chief Justice.

Plaintiff City of Augusta and defendants both claim title to a tract of land straddling Pleasant Hill Road in Augusta adjacent to the Chelsea town line. Defendant Guy R. Allen through his corporation, also a named defendant, claims title to the property by

virtue of a 1980 quitclaim deed from Theron A. Fowles. The City of Augusta's claim is based on its foreclosure of the lien levied for taxes assessed in 1957, when the same Fowles owned the property. When in late 1980 defendants entered the land and began preparations for a woodcutting operation, the City sued to enjoin them from carrying out their plans. By a counterclaim, defendant corporation sought to confirm its title to the land and to recover damages for the City's allegedly wrongful interference with its woodcutting business. The Superior Court (Kennebec County) found that the City owned the land, issued a permanent injunction prohibiting defendants from cutting wood on the property, and dismissed the counterclaim. We deny defendants' appeal from that judgment.

The disputed property is an unimproved tract of land, now apparently all or mostly woodland, in regard to which the City purported to foreclose tax liens for the four tax years 1954 through 1957. Theron A. Fowles, the record owner at that time, had many years before acquired the property from Lillian Longfellow by a deed describing the property by metes and bounds as a single tract. That identical metes-and-bounds description of a single tract was used by Fowles in his November, 1980, deed to defendant Allen's corporation.

From 1954 to the present, Augusta residents have occasionally hunted and hiked on the land, and in 1971 the Augusta City Council by resolve designated it as open space for public recreational use. The Superior Court justice found it unnecessary to decide the City's alternative claim of title by adverse possession.

Of the four tax lien certificates filed in the Kennebec County Registry of Deeds in the 1950s, the Superior Court justice held that the first three were invalid for lack of an adequate "description of the real estate on which the tax [was] assessed" as required by statute; and the City of Augusta accepts the correctness of that ruling. However, the fourth lien certificate, for 1957 taxes, contained, the justice held, an adequate description by referring to lots "14–35" and "14–36A" as shown on tax maps in the office of the city assessor.[1] In upholding the validity of the 1957 lien certificate and confirming title in the City, the Superior Court found that the Augusta assessors had acted properly in assessing Mr. Fowles' land as a single parcel[2] even though it was divided into two pieces by Pleasant Hill Road.

## I. The Validity of the Lien Certificate

Defendants' first challenge to the City's title to the former Fowles land attacks the statutory adequacy of the 1957 lien certificate and therefore the validity of the foreclosure. The statutes governing the procedures whereby an owner may lose his property for the nonpayment of taxes are to be strictly construed against the taxing authority.

Statutory provisions allowing summary procedures for the collection of taxes are subject to the strict construction rule and will not be extended by implication; full compliance with every step or requirement in the taxing process from begin-

---

1. The 1954 lien certificate described "141 acres land Pleasant Hill Rd."; the 1955 certificate simply had "55A Pleasant Hill Road" as the description; and that of 1956 referred to "162 acres land Pleasant Hill Road and Thomaston Road." As a result of the preparation in 1955 of tax maps by a professional appraisal firm, the 1957 assessment and tax lien certificate described the parcel being assessed as "14–35 14–36A, as shown in map book in Assessors Office." Defendants claim that the 1957 description included more land than that previously assessed under the former descriptions and more than that conveyed in 1980 to defendant corporation by Fowles. The record, how-ever, does not show how much more land, if any was in fact included, what the source of title was, or, if the owner was someone other than Fowles, who held the title to that alleged additional land. See n. 8 below.

2. The current chairman of the Augusta Board of Assessors testified without objection that his records show that the Fowles land on Pleasant Hill Road was in 1957 and prior thereto assessed as a single parcel, even though the professional firm preparing the assessors' tax maps had given separate lot numbers to the parts of the parcel on the east and west sides of the road.

ning to end is essential to the validity of such proceedings.

*Capitol Bank & Trust Co. v. City of Waterville,* Me., 343 A.2d 213, 218 (1975). To be a valid lien, the certificate must comply with the provisions of R.S.1954, ch. 91–A, § 88 [enacted by P.L.1955, ch. 399, § 1; current version at 36 M.R.S.A. § 942 (Supp.1981) ].[3] In relevant part, section 88 controlling tax foreclosures required that the recorded lien certificate contain: (1) the tax collector's signature; (2) the amount of the tax; (3) a description of the real estate upon which the tax is assessed; (4) an allegation that a lien is claimed; (5) an allegation that a demand for payment has been made in accordance with the applicable statute; and (6) an allegation that the tax remains unpaid.

 The printed form used by the City for the 1957 tax lien certificate had a space provided for a recitation of the date on which demand for payment was made. That space, however, was left blank on the lien certificate by which the City claims title to the real estate.[4] Defendants contend that that omission is fatal to the validity of the certificate. Absent the date of notice, they argue, it is impossible to determine from the face of the certificate whether demand for payment had in fact been made in accordance with R.S.1954, ch. 91–A, § 88.[5] The statute controlling tax foreclosures did not, however, require that the lien certificate on its face display the date on which the demand for payment was made; it required only a *certified statement* that proper demand for payment had been made. The printed form, with spaces for the inclusion of the date notice was sent, does not dictate a contrary conclusion; whoever prepared the form was simply over-cautious and suggested including more than was required under the statute. We agree with the Superior Court's holding that the 1957 lien certificate contains all the information required by the tax foreclosure statute.

## II. *The Validity of the Assessment*

Defendants' second and principal attack on the City's claim of title is based upon their assertion that the tax assessment underlying the 1957 tax lien was itself invalid. They contend that the Augusta assessors by treating the Fowles land as a single parcel, even though it was physically divided by the public road running across it, violated the statutory requirement for a separate tax valuation for each parcel of real estate. R.S.1954, ch. 91–A, § 36 [enacted by P.L. 1955, ch. 399, § 1; current version at 36 M.R.S.A. § 708 (1978) ].[6] The presence of

---

**3.** R.S.1954, ch. 91–A, § 88 provided in part:

> After the expiration of said 10 days and within 10 days thereafter, the tax collector shall record in the registry of deeds of the county or registry district where said real estate is situated, a tax lien certificate signed by said tax collector setting forth the amount of such tax, a description of the real estate on which the tax is assessed and an allegation that a lien is claimed on said real estate to secure the payment of said tax, that a demand for payment of said tax has been made in accordance with the provisions of this section, and that said tax remains unpaid.

**4.** In the 1957 lien certificate the Augusta tax collector certified in pertinent part

> ... that a demand for payment of said tax has been made of the said ___Fowles, Theron A.___ by my sending by registered mail to his last known place of abode at Augusta, Maine, ___ on the ___ day of ___ 195__, a notice in writing ... in accordance with the provisions of Chapter 91A, Sec. 88–89, Revised Statutes of Maine, 1954, as amended.

**5.** In other pertinent part, R.S.1954, ch. 91–A, § 88 (see n. 3 above) provided the following as to timing of the tax collector's demand for payment:

> The tax collector may, after the expiration of 8 months and within 1 year after the date of original commitment of a tax, give to the person against whom said tax is assessed, or leave at his last and usual place of abode, or send by registered mail to his last known address, a notice in writing signed by said tax collector stating the amount of such tax, describing the real estate on which the tax is assessed, alleging that a lien is claimed on said real estate to secure payment of the tax and demanding the payment of said tax within 10 days after service or mailing of such notice with $1 for said tax collector for making the demand.

**6.** R.S.1954, ch. 91–A, § 36 provided:

> The assessors shall ascertain as nearly as may be, the nature, amount and value as of the 1st day of each April of the real estate and personal property subject to be taxed,

the road, bolstered by the use on the assessors' tax maps of separate lot numbers on opposite sides of the road, is the only evidentiary factor urged by defendants to require the Augusta assessors to value and tax the former Fowles land as two parcels. They do not present any evidence to contradict the fact that the whole tract was of the same character and usage and had been bought and sold as a unit.

Having previously concluded that the 1957 tax lien certificate complied with the statutory requirements, the Superior Court correctly accorded the City of Augusta the benefit of the statutory presumption of the validity "of the title of the municipality to the real estate" described in the lien certificate and "of the regularity and validity of all proceedings with reference to the acquisition of title by such tax lien mortgage and the foreclosure thereof." R.S.1954, ch. 91–A, § 89 [enacted by P.L.1955, ch. 399, § 1; current version at 36 M.R.S.A. § 943 (Supp. 1981)].[7] By virtue of the presumption, defendants, in attacking the City's title by tax foreclosure, had "the burden of proving that the nonexistence of the presumed fact[s] [was] more probable than its existence." M.R.Evid. 301(a). As applied specifically to the only issues raised in the case at bar, defendants had the burden of proving by a preponderance that the Augusta assessors did not in 1957 assess the Fowles land as a single parcel or else that the factual circumstances of that land were such as to make its assessment as a single parcel unlawful.

On the first issue, the only suggestion that the assessors did not in fact assess the whole Fowles tract as a single parcel is the reference on the face of the tax lien certificate to the two lot numbers "14–35" and "14–36A" on the tax assessors maps. At the same time, however, the present Augusta tax assessor testified without objection that his office records show that all the Fowles land in the period of 1954 through 1957 was assessed as a single parcel, and the tax lien certificates for the four years (see n. 1 above) are consistent with that testimony. The Superior Court justice properly found that defendants had not rebutted the presumption of a single-parcel assessment of the Fowles tract.

Defendants also failed to rebut the presumption that the assessors acted lawfully in not assessing Mr. Fowles for two separate parcels. To rebut that presumption defendants point to the presence of Pleasant Hill Road running through the property. They in effect argue for a rule of law that a single parcel may never for tax assessment purposes be divided by a public road. We reject that argument. The mere presence of the road does not rebut the statutory presumption of regularity in assessing the Fowles land as a single parcel.

The accepted rule, applied by the trial court, is that the tax assessors have a reasonable degree of discretion in determining where individual parcels exist, and if the assessors have acted reasonably in the discharge of their statutory responsibility to place a separate assessment on each parcel of real estate, the assessment will be upheld. *See Fickett v. Hohlfeld*, Me., 390 A.2d 469, 471 (1978); *City of Boston v. Boston Port Development Co.*, 308 Mass. 72, 77, 30 N.E.2d 896, 899 (1941) ("whether the method of assessment is reasonable is in each case largely a question of fact for the

and shall estimate and record separately the land value, exclusive of buildings, of each parcel of real estate.

7. R.S.1954, ch. 91–A, § 89 provided in part:
 The tax lien mortgage [created by the filing of the tax lien certificate] shall be prima facie evidence in all courts in all proceedings by and against the municipality, its successors and assigns, of the truth of the statements therein and after the period of redemption ["18 months after the date of the filing of the

tax lien certificate in the registry of deeds"] has expired, of the title of the municipality to the real estate therein described, and of the regularity and validity of all proceedings with reference to the acquisition of title by such tax lien mortgage and the foreclosure thereof.

That "statute providing that a fact or group of facts is prima facie evidence of another fact establishes a presumption within the meaning of [M.R.Evid. 301]." M.R.Evid. 301(b).

judge"). The reasonableness of the assessors' determination depends on the circumstances in each case and no single factor is decisive of the issue. If the land assessed is contiguous but for the road, and is of the same ownership, character, and usage, a single assessment of the entire tract is not invalid because a road crosses it. *See Town of Lenox v. Oglesby,* 311 Mass. 269, 41 N.E.2d 45 (1942); *Wilkerson v. Harrington,* 115 Miss. 637, 645, 76 So. 563, 564 (1917); *Westhampton v. Searle,* 127 Mass. 502, 506 (1879). *Cf. Board of Environmental Protection v. Bergeron,* Me., 434 A.2d 25 (1981) [public road running through a tract does not necessarily establish separate "parcels of land" under the site location subdivision law, 38 M.R.S.A. §§ 481 *et seq.* (1978 & Supp.1981)].

Contrary to defendants' contention, *McCarty v. Greenlawn Cemetery Ass'n,* 158 Me. 388, 185 A.2d 127 (1962), does not mandate or even suggest a different conclusion. There the assessors had in fact separately assessed two lots of real estate set apart by a public road, placing separate valuations upon the two separately identified parcels. A single lien certificate was, however, filed for the delinquent taxes on both parcels. In *McCarty* the Law Court focused on the propriety of the single lien certificate, the validity of the assessors' action in separately assessing the land on opposite sides of the road being an assumed given. Although the *McCarty* opinion, 158 Me. at 391, 185 A.2d at 128, noted that a road separated the two parcels that had been separately assessed in that case, it by no means even in dictum suggested that land divided by a public road may never, as a matter of law, be assessed as a single parcel.

For the rule of law they urge upon the court, defendants claim support from an alleged practical construction contemporaneously put upon R.S.1954, ch. 91–A, § 36 by assessors' manuals and similar publications. For example, the 1947 edition of the *Guide for Use of Assessors* published by the State of Maine Bureau of Taxation stated that ". . . when land is cut by a road, or by a natural obstruction such as a river, *it is best* to assess in separate parcels." (Emphasis added) Those publications, however, set forth merely recommended guidelines for the separate assessment of parcels, and to the extent they encouraged an inflexible rule mandating separate parcels on either side of a road, they suggested more than was necessary under the statute. Although the existence of a public road splitting a tract of real estate is one factor to be taken into account in evaluating the reasonableness of the assessors' judgment in exercising their statutory responsibilities, that factor without more does not *per se* require the tract to be treated as two parcels for tax assessment purposes.

■ Defendants also assert that the professional firm's use of separate lot numbers on its tax map to identify the land on opposite sides of Pleasant Hill Road, namely, numbers "14–35" and "14–36A," indicates the existence of two parcels rather than one.[8] We specifically declined to adopt such a rule in *Fickett v. Hohlfeld, supra* at 471. *See also* 3 Cooley, *The Law of Taxation* § 1068, at 2167–68 (4th ed. 1924). The professional firm that prepared the tax maps may have been motivated by consider-

8. Defendants argue that the 1957 assessment of lots 14–35 and 14–36A encompassed additional land that was not included in the real estate conveyed to defendant in 1980. At oral argument the possibility was raised that this additional land had a different source of title than the remainder of Fowles' property, which he had acquired from Lillian Longfellow by a description used in 1980 by Fowles in his deed to defendant corporation. The record, however, does not reveal whether this additional land did in fact exist or, if it did, whether Fowles acquired it from a separate source. See n. 1 above. Moreover, defendants failed at trial to raise any issue as to whether the existence of a different source of title for a portion of the assessed parcel affected the validity of the assessment, thus waiving the right to have the question considered on appeal. *See State ex rel. Tierney v. Ford Motor Co.,* Me., 436 A.2d 866, 871 (1981); *Reville v. Reville,* Me., 289 A.2d 695, 698 (1972). Elsewhere it has been held that a tract of land derived from more than one source of title does not for that reason alone constitute as a matter of law more than one parcel. *Fearon v. Town of Amherst,* 116 N.H. 392, 360 A.2d 127 (1976).

ations of convenience or other concerns unrelated to the assessors' discretion to decide within the bounds of reasonableness what constitutes a single parcel of real estate for tax purposes.

The Law Court long ago described the rationale behind the rule requiring separate assessments of distinct parcels of real estate. In *Nason v. Ricker*, 63 Me. 381, 382–83 (1873), we stated:

The owner had a right to redeem each of those [separate] lots by paying the taxes specifically assessed thereon, without being obliged to pay the tax assessed upon the other lot also, which constituted no lien upon the lot he might wish to redeem. The assessment and valuation of both lots in gross, if upheld, would deprive the owner of this right by compelling him to pay the taxes assessed upon both lots, or forfeit his right to relieve either from the lien imposed by the tax upon it.

That purpose does not require for its effectuation a rule of law prohibiting assessors from ever treating land divided by a road as a single parcel for property tax purposes. It ultimately would be most advantageous to a delinquent taxpayer to have his real estate assessed in the smallest possible units, using as dividing lines between the separate "parcels" public roads, streams, stone walls, or other natural or man-made landmarks. The test, however, has to be one of reason, applied in the first instance by the assessors, subject to the presumption of regularity, but also subject to invalidation of the assessment on a showing that in a particular instance the land lying on opposite sides of the dividing landmark did not constitute a functional unit.

The piece of real estate in contest here was apparently at all times treated as a single parcel by both its owners and the taxing authorities. A single lien was filed corresponding to the single assessment in accordance with the rule of *McCarty v. Greenlawn Cemetery Ass'n supra*. The validity of that assessment made in 1957 is to be determined on the basis of whether under the particular circumstances it was rea-

sonable for the assessors to assess tax map lots 14–35 and 14–36A as one parcel. For all that the evidence shows, that tract, regardless of the different tax map numbers and the existence of a public road running through it, was of the same character and usage, was a single unbroken contiguous land area but for the road, and had a single owner who had originally acquired the whole tract, and was later to convey it, by a single metes-and-bound description. The assessors could reasonably tax this particular tract as a single parcel of real estate. It is clear that defendants have failed in carrying their burden of proving that the nonexistence of valid title in the City of Augusta to the former Fowles land is more probable than its existence. *See Fickett v. Hohlfeld, supra* at 472.

The entry will be:

Judgment affirmed.

All concurring.