BRIDAE V. KENNEY *vs.* BOSTON MUTUAL LIFE INSURANCE
COMPANY.

Suffolk.    February 5, 1940. — June 24, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Insurance*, Life: notice. *Evidence*, Letter, Presumptions and burden of
proof.

A finding, that the notice necessary to effect extended insurance under a
Massachusetts life insurance policy was duly "filed" at the home
office of the company in Boston, was warranted by evidence that the
notice, addressed to the company by its full name at its branch office
in a Boston suburb, "care of" one who had formerly been manager of
that office, was handed, postage prepaid, to the letter carrier on the
insured's mail route, and that by the routine of the branch office,
such a notice would immediately be forwarded to the home office.

Delivery of a letter, postage prepaid, to the letter carrier on the sender's
mail route is as much a mailing of the letter and *prima facie* evidence
of its delivery to the addressee as when the letter is deposited in a
mail box or post office.

CONTRACT.    Writ in the Superior Court dated June 10,
1936.

The action was tried before *Kirk*, J.

*E. M. Dangel, (D. S. Miller & G. A. Goldstein* with him,)
for the plaintiff.

*R. B. Johnson,* for the defendant.

DOLAN, J.    This is an action of contract by the plaintiff
beneficiary of a life insurance policy to recover the amount
of the policy ($5,000) from the defendant.    At the close of
the evidence, upon motion of the defendant, and subject to
the plaintiff's exception, the judge ordered the jury to re-
turn a verdict for the defendant.    The policy of insurance,
together with other exhibits, is made a part of the record.[1]

At a pre-trial hearing it was stipulated that the defendant
issued the policy in question to the plaintiff's husband and
that the plaintiff is named as beneficiary therein.    At the

---

[1] The policy was issued on November 27, 1932. — REPORTER.

trial the parties agreed that the "only issue in the case is whether or not the insured exercised his option which extended the insurance in accordance with the terms of said policy."

There was evidence that the policy was taken out at the Waltham office of the defendant, and that the premiums were paid at that office. The Waltham office is a branch office of the defendant, where "policies are sold, premiums received, and [where] everything pertaining to selling insurance is conducted. . . . Matters in connection with extending insurance policies would be dealt with at the Waltham office and the forms would be sent to the Boston office; the Waltham office had no authority to grant any applications for extended insurance." "If a letter came in which should go to the Boston office at 160 Congress Street . . . the superintendent of the Waltham office would forward it by mail the day it was received to the Boston office, 160 Congress Street." On November 17, 1935, there was some talk between the plaintiff and the insured with reference to the premium due on that day. It was not paid, and on the next day, after another conversation with the insured, the plaintiff, at his request, telephoned to one Joseph White, who had been in charge of the Waltham office until April 17, 1934, and who "thereafter in 1935 was connected with the Stuart Street office." White had sold the policy in question to the insured. The plaintiff talked with White over the telephone, and, in consequence of the conversation had between them, she wrote a letter at the dictation of the insured, which he signed. The letter was as follows: "Please put my policy" — the policy number — "on extended insurance as provided in Clause C of my policy." The letter was addressed to "The Boston Mutual Life Insurance Company of Boston, Care of Mr. White, 680 Main Street, Waltham, Mass." During the morning of November 18 the plaintiff delivered the letter, postage prepaid, to the postman on whose route she lived.

The insured died in December, 1935. A proof of claim and proofs of death were filed with the defendant, but it made no payment on account of the policy. In its answer

the defendant admits that "there is due to the plaintiff the sum of $164.20, being paid up value of the policy" and states that this amount "has been tendered to the plaintiff and refused."

In accordance with G. L. (Ter. Ed.) c. 175, § 144, it is provided in the policy that after the payment of three full annual premiums the holder of the policy shall be entitled "by a writing filed at the home office of said [defendant] Company" within thirty days after a default in the payment of a subsequent premium to elect one of certain options, which include one of "extended insurance." An examination of the tables contained in the policy discloses that the shortest time fixed for "extended insurance" is one year and seventy-one days. In the present case if the election to take extended insurance was properly exercised by the insured, the period of extension would include the day of his death.

There are a number of references in the policy to the "home office" of the defendant, but no more definite reference is made to its location except that to be found in the heading of the policy which reads "Boston Mutual Life Insurance Company  Boston, Massachusetts," and that contained in the recitation that the contract was executed at "Boston, Massachusetts." In the course of the trial the judge said: "The policy, I assume, does state the home office?" The defendant's counsel replied, concededly through innocent mistake: "Yes, 160 Congress, Boston." The policy was in evidence but does not contain that address.

The jury could find that, while the representatives of the defendant in its Waltham office could not grant applications for extended insurance, they could and did receive such applications and that they forwarded them by mail to the home office of the company on the date of receipt.

It is true that to be "filed" it was necessary that the written election must have been delivered physically into the possession of the defendant at its home office, *Gorski's Case*, 227 Mass. 456, 459-460, but the mailing of the written election of the insured to the Waltham office of the defendant does not "merely create a presumption . . . but rather

constitutes *prima facie* evidence . . . of delivery to the addressee in the ordinary course of mail." *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman,* 302 Mass. 508, 509, and cases cited. See also 1 Wigmore, Evidence (3d ed.) § 95 and cases cited. The delivery of the letter, postage prepaid, by the plaintiff to the carrier on "her route" was just as much a mailing as if it had been deposited in a letter box or in a post office. Under title VI, c. 1, § 939 of the Postal Laws and Regulations, a copy of which is before us, a carrier is required to receive letters for mailing while on his route if postage is affixed.

Assuming for the moment that the address on the letter had not contained the words "Care of Mr. White," the jury could have found that the letter was delivered in the ordinary course of mail at the Waltham office of the defendant, and could have inferred that the superintendent of that office, in accordance with the custom of the office authorized by the defendant, would and did transmit the letter on the day of its receipt to the home office of the defendant, and that the defendant received it and placed it on file. The evidence set forth in the bill of exceptions does not disclose that the receipt of the written election was denied by the defendant. But even if its receipt had been denied, the question whether it had been received would still be one of fact for the determination of the jury. *Fleming* v. *Doodlesack,* 270 Mass. 271, 275. *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman,* 302 Mass. 508, 510. We do not adopt the contention of the defendant to the effect that mailing does not satisfy the requirement of the policy that the written election be filed at the home office of the company. If in fact the jury could find on the evidence that the written election was received by the defendant at its home office within the time limited by the policy, that is enough. In the present case on the assumption we have made, for reasons already given, we think they could so find. We discover nothing in the cases cited by the defendant in conflict with this view.

The defendant, however, further contends that, even if the letter was received at the Waltham office, the evidence

does not warrant a finding that it was forwarded to the home office, because "it was addressed 'Care of Mr. White.'" We are not in accord with this contention.

The jury could find that until April, 1934, White, who had sold the policy of insurance to the insured, was the manager of the defendant's Waltham office, and that it was to this office that the insured always paid the premiums due on the policy. They could also find that the direction of the letter to "The Boston Mutual Life Insurance Company of Boston" made it the true addressee, that care had been taken to set down therein its full corporate title, and that the letter was properly addressed to it. They could find that the addition of the words "Care of Mr. White" was subordinate, and did not operate to change the character of the letter from one to the defendant on its business to one to White. We think the jury could infer that, upon the receipt of the letter, the superintendent of the Waltham office in the absence of White, who was not then connected with that office, would treat the letter as one to the company and transmit it on the day of its receipt to the home office, that he did so, and that the written election was filed in the home office in accordance with the terms of the policy.

*Exceptions sustained.*