**FEDERAL INSURANCE COMPANY,**
Plaintiff, Appellant,

v.

**Harry SUMMERS, Defendant, Appellee.**

No. 7124.

United States Court of Appeals
First Circuit.

Nov. 6, 1968.

James C. Heigham, with whom Robert S. Frank, Jr., and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellant.

James F. Freeley, Jr., Boston, Mass., with whom Robert E. McCarthy and Feeney & Malone, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

In December, 1957, the defendant, Harry Summers, purchased 2000 shares of the stock of General Plywood Corporation through the brokerage house of Harris, Upham in Boston. On December 24, 1957, a stock certificate No. CU–2932 (the original certificate) was issued in the defendant's name. On December 31, 1957, the certificate was mailed from the New York offices of Harris, Upham to the defendant's business address in Boston.

On the morning of January 16, 1958, the defendant executed a proof of loss for the certificate to the plaintiff.[1] There was testimony by the defendant that the certificate was received by him on the afternoon of Jannuary 16, 1958. There was also testimony by the defendant that upon receipt of the certificate he notified Harris, Upham as he was obligated to do under the terms of the proof of loss.

On January 27, 1958, the plaintiff issued its indemnity bond. The obligees on the bond were General Plywood, its transfer agent, and its registrar.[2]

There was evidence in the record to the effect that a replacement certificate was issued by General Plywood. The replacement was never received by the defendant, although he eventually learned of its existence.[3]

From 1958 until August of 1966 the original certificate was pledged at two Boston banks. In August of 1966 the defendant sold the certificate through the brokerage house of E. F. Hutton & Co. Hutton paid $25,524.23 to defendant's account at City Bank & Trust, but, subsequently, Hutton was unable to obtain transfer of the certificate. Application was made to plaintiff on its bond and plaintiff paid the sum of $25,524.23 to Hutton in consideration of the assignment of Hutton's rights against the defendant to plaintiff.

Plaintiff then brought suit against the defendant in the district court seeking recovery of $25,524.23 on the grounds of breach of contract, fraud, and breaches of the warranties of Mass.Gen.Laws, c. 106, § 8–306. At the close of the evidence the trial court directed a verdict for the defendant on all four counts of plaintiff's complaint.

On this appeal the plaintiff challenges the directed verdict on the grounds that as to counts I and II there was sufficient evidence to present a jury question, and with respect to counts III and IV, the evidence entitled plaintiff to a directed verdict.

## Count I—Notification

In count I the plaintiff alleged that the defendant never notified Harris, Upham of his receipt of the original certificate, and that as a result plaintiff was dam-

1. The Proof of Loss was used in support of an application for a replacement certificate and the following obligation was imposed on the defendant:
"4. Deponent agrees that if the securities should ever come into deponent's hands, custody or power, deponent will immediately notify the Sender and (if deponent has received new securities in the meantime) will surrender the original securities to the Insurance Company."

2. The bond obligated the plaintiff to the following obligees:
"General Plywood
The Kentucky Trust Company, its Transfer Agent; The Louisville Trust Company, its Registrar; and unto all such individuals, firms and corporations as may now or hereafter be acting as transfer Agent(s), Registrar(s), Redemption Agent(s), Depositary(ies), Trustees and unto any other Paying, Distributing, or Disbursing Agents or Agencies. * * *"

3. The record does not show when the replacement was issued, nor does it show what happened to the replacement. The defendant testified that he saw the replacement but he did not say when he saw it. However, the defendant also testified that when he sold certificate No. CU–2932 in August of 1966, he had no reason to know that there was any question as to its validity.

aged by having to perform on the indemnity bond.[4]

In response to plaintiff's allegation of failure of notification, the defendant testified that he telephoned Mr. Fishburne of Harris, Upham upon receipt of the certificate on the afternoon of January 16, 1958. No attempt was made by plaintiff to call Mr. Fishburne as a witness or to introduce his deposition, or to indicate that Mr. Fishburne was unavailable. Plaintiff recognizes that defendant's testimony is uncontradicted but plaintiff argues that it was entitled to go to the jury because the jury might have disbelieved the defendant.

This court has repeatedly stated that a scintilla of evidence is not enough to warrant submission of an issue to the jury. Cross v. M. C. Carlisle & Co., 368 F.2d 947 (1st Cir. 1966); Magnat Corp. v. B & B Electroplating Co., 358 F.2d 794 (1st Cir. 1966); Rainey v. Gay's Express, Inc., 275 F.2d 450 (1st Cir. 1960). At the same time this court has also said that in determining whether or not a directed verdict is justified, " * * * the evidence must be viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of every inference favorable to him which may be fairly drawn." Cross v. M. C. Carlisle & Co., supra at 953. But this does not mean that the party having the burden of proof has a right to get to the jury when the only evidence is testimony against him. Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1949); Davis v. National Mortgagee Co., 349 F.2d 175 (2d Cir. 1965); Mandelbaum v. United States, 251 F.2d 748 (2d Cir. 1958). Moreover, in Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120, this court held that:

" * * * however satisfied a court may be from the witness's demeanor or his demonstrated untruthfulness in other respects that certain testimony is false, it cannot use such disbelief alone to support a finding that the opposite was the fact." 344 F.2d at 784.

If a court as the trier of fact may not use disbelief alone to find that the opposite was fact, a fortiori a party is not entitled to get to the jury on the sole basis that the jury may disbelieve the testimony of his adversary.[5]

Appellant argues that this rule would be too harsh where the only available evidence is the testimony of one's adversary. Dyer v. MacDougall, supra, (concurring opinion by Judge Frank.) But that is not this case. The defendant testified that he called Mr. Fishburne of Harris, Upham, and in view of the fact that this statement could have easily been corroborated or impeached by Mr. Fishburne, it would not seem to be a permissible inference that the defendant was untruthful.

Appellant makes much of the fact that defendant did not notify it and that defendant did not notify anyone in writing of his receipt of the original certificate. The short answer is that defendant had no such obligations.[6]

4. The record in this case raises significant questions concerning the cause of plaintiff's damage. E. F. Hutton was not an obligee under the bond (see n. 2 supra), and there is nothing in the record to indicate who made application on the bond. However, we assume that the issuer or one of its agents supplied plaintiff with the information that Hutton possessed the original certificate. Although the record is at best ambiguous, we assume that Hutton sought registration of the original certificate from General Plywood, that General Plywood refused to register the certificate and in turn demanded that plaintiff, as it was obligated to do under the bond, obtain the certificate from Hutton.

5. Indeed, we endorsed this very principle in Janigan where we said in support of the rule quoted above:
"Were the rule otherwise a case could be made for any proposition in the world by the simple process of calling one's adversary and arguing to the jury that he was not to be believed." 344 F.2d at 784-785.

6. See n. 1 supra.

The plaintiff failed to carry its burden under count I and the trial court correctly directed a verdict for defendant.

### Count II—Misrepresentation

The basis of count II of plaintiff's complaint is that plaintiff issued its indemnity bond in reliance on the proof of loss executed by defendant, that the proof of loss was fraudulently executed in that the certificate had been received prior to January 16, 1958, and that plaintiff was damaged as a result of defendant's misrepresentation.

It is first necessary to determine if in fact the certificate was received by the defendant prior to the execution of the proof of loss. The defendant testified that the certificate was received on the afternoon of January 16, 1958, *after* the proof of loss had been executed. Plaintiff argues that a jury issue was created because under Massachusetts law a showing of the mailing of a properly addressed letter is *prima facie* evidence of the receipt of the letter in the ordinary course of the mails. See, e. g., Old Colony R. Co. v. Board of Assessors of Quincy, 305 Mass. 509, 26 N.E.2d 313 (1940); Kenney v. Boston Mut. Life Ins. Co., 306 Mass. 282, 28 N.E.2d 490 (1940); Hobart-Farrell Plumbing & Heating Co. v. Klayman, 302 Mass. 508, 19 N.E.2d 805 (1939).

■ There was uncontradicted evidence that the certificate was properly addressed and posted when mailed first-class on December 31, 1957. However, defendant argues that the Massachusetts decisions cited above are inapplicable because there was no evidence as to the ordinary course of the mails and no indication that the trial judge took judicial notice of this fact. Unfortunately for defendant Massachusetts law requires neither evidence of the ordinary course of the mails nor judicial notice of that fact. Instead, under Massachusetts law, there is a presumption of regularity of the mails. The case of Kenney v. Boston Mut. Life Ins. Co., supra, is instructive on this point. There the issue was

whether an application for extended insurance had been filed, at the company's home office in Boston, prior to the death of the insured. The insured died in December of 1935, and there was evidence that the application had been mailed on November 18, 1935, to the company office in Waltham, Massachusetts. The insurance company denied receipt prior to the insured's death, but the court held that a jury could find that the application was received in Waltham and forwarded to Boston prior to the death of the insured. In the present case there would be a presumption that first class mail from New York to Boston required less than 17 days and the defendant's denial of receipt before January 16, 1958, would create a question of fact to be determined by the jury.

■ If the jury were to find that the original certificate was received *prior* to the execution of the proof of loss, this would clearly be sufficient to establish fraudulent conduct by the defendant. However, the defendant argues that even if there was a misrepresentation as to receipt of the certificate, there was a cure of fraud before reliance by the plaintiff. The cure is alleged to have occurred by virtue of defendant's notification of Mr. Fishburne of Harris, Upham on January 16, 1958.

■■ This defense presents a rather unusual situation in that it rests upon the same issue—notification of Harris, Upham—which was involved in count I. We hold that a directed verdict was proper under count I because plaintiff had the burden of proof and did not make out a *prima facie* case. But under count II since cure of fraud is an affirmative defense, the defendant had the burden and we conclude that it was error to direct a verdict in his favor.

■ We reach this conclusion by adhering to well-established legal principles. It is a rare case where the proponent is entitled to a directed verdict, Roche v. New Hampshire Nat'l Bank, 192 F.2d 203 (1st Cir. 1951), and indeed, the only case, where a directed verdict

would be warranted would be where the proponent's (i. e., defendant's) evidence establishing a *prima facie* case is uncontradicted and unimpeached. See, e. g., Chesapeake & O. R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 (1931); National Dynamics Corp. v. Petersen Publishing Co., 185 F.Supp. 573 (S.D.N.Y.1960). See generally 5 Moore's Federal Practice 2319 (2d ed. 1968). Even where the proponent's evidence is uncontradicted, a directed verdict would not be proper if the evidence gives rise to conflicting inferences, see, e. g., Readnour v. Commercial Standard Ins. Co., 253 F.2d 907 (10th Cir. 1958), or where the case is totally dependent on the credibility of a witness. See, e. g., Powers v. Continental Cas. Co., 301 F.2d 386 (8th Cir. 1962); Polhemus v. Water Island, Inc., 252 F.2d 924 (3rd Cir. 1958).

■ Here the only evidence with respect to notification was the defendant's own testimony that he called Mr. Fishburne. Here the burden was on the defendant. Powers v. Rittenberg, 1930, 270 Mass. 221, 169 N.E. 913. The jury was not obliged to believe him, and might very well not, if they believed, in accordance with the presumption, that he had already received the certificate before January 16.

If the jury were to find misrepresentation and were to resolve the question of notification against the defendant, there would be no difficulty in finding that the misrepresentation caused plaintiff's loss. The proof of loss was used in support of an application for a replacement certificate and the indemnity bond was obtained incident to the issuance of a replacement. Although the record is unclear as to who made application on the bond, there is no question that plaintiff was obligated to obtain the original certificate if it ever reappeared.

For the reasons discussed above, we hold that a new trial must be granted with respect to count II.

### Counts III and IV—Warranties

■ These latter counts exist by virtue of an assignment of rights against the defendant from E. F. Hutton to the plaintiff. The assignment's validity is not in dispute but the record is plaintiff's downfall. Even were we to assume that the warranties of Mass.Gen.Laws, c. 106, § 8–306 were breached by the defendant, there would be no basis for permitting plaintiff to recover. The record discloses only that transfer could not be obtained.[7] There is no indication that the failure to obtain transfer was in any way related to the scope of the warranties at issue. The directed verdict as to counts III and IV is affirmed.[8]

---

7. The only evidence with respect to failure to obtain transfer of the original certificate was the following testimony of Mr. Ruffer, an employee of E. F. Hutton:

"Q. Mr. Ruffer, what if anything did Hutton do with Exhibit 6 [the original certificate] after receiving it?
A. We sent it to Transfer.
Q. Did you obtain a transfer?
A. No, we could not."

8. Indeed the record gives us the uneasy feeling that we are looking at this case through a small keyhole. Fishburne, a possibly key witness, was not called. Precise information about the issuance of the replacement certificate is absent, as is evidence about what happened to it subsequently. And, as we have noted, there is no factual information about efforts to secure registration of certificate No. CU–2932, or a replacement therefor, or what obstacles might have negated these efforts. We are therefore by no means sure that justice has been done, only that we see no other result permitted by the law on the state of this record.