Robert STEIN et al.

v.

MUTUEL CLERKS GUILD OF MASS-
ACHUSETTS, INC.

Civ. A. No. 71-640-T.

United States District Court,
D. Massachusetts.

Nov. 8, 1974.

Grady & Kaplan, Mark G. Kaplan,
Boston, Mass., Robert J. Canavan, Mat-
tapan, Mass., for plaintiffs.

Harold B. Roitman, Boston, Mass., for
defendant.

## OPINION AND ORDER

TAURO, District Judge.

Plaintiffs bring this action for damages and other relief alleging violations of their rights under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411. Jurisdiction is invoked pursuant to 29 U.S.C. § 412.

Plaintiffs Stein, Lanfranchi, Beaune and Grasso are all former employees of Suffolk Downs Race Track and former members of the defendant Mutuel Clerks Guild of Massachusetts. Alice Meader has been substituted as a plaintiff for her deceased husband, Stoughton Meader, an original plaintiff to this action. All original plaintiffs were employed in the Maintenance Department of Suffolk Downs.

The defendant, a labor organization within the meaning of 29 U.S.C. § 402(i), is the exclusive bargaining representative of approximately 400 employees of Suffolk Downs, including the employees of its Maintenance Department.

### I

In 1968, labor negotiations between the defendant and Suffolk Downs having broken down, a strike vote was taken and picket lines were maintained for two days (April 15, 16, 1968) at Suffolk Downs. The plaintiffs were among approximately 30 employees of the Maintenance Department who crossed the picket lines and continued to work.

At about the time of the strike, Local 841 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (Local 841), a rival labor organization, attempted to organize the employees of the Maintenance Department of Suffolk Downs. On or about April 11, 1968, the plaintiffs Stein, Beaune and Grasso each signed union authorization cards signifying their support for Local 841's petition to hold a representation election among the employees of the Maintenance Department. Plaintiff Lanfranchi became one of the stewards of Local 841.[1]

In July 1969, the Guild filed intra-union charges against 31 employees of the Maintenance Department, including all five original plaintiffs. These employees were charged with strike-breaking, promoting dual unionism and other offenses arising out of the strike of April 1968. The plaintiffs were sent and received certified letters dated July 17, 1969, and postmarked July 22, 1969, purporting to notify them of these charges.[2] The letters stated that a hearing before the defendant's Execu-

---

1. Local 841's petition for certification was dismissed by the Massachusetts Labor Relations Commission in October 1968. Accordingly, the Guild remained the duly-authorized representative of the employees of the Maintenance Department of Suffolk Downs.

2. These five were charged with the following offenses:
   A. Guild v. Plaintiff Stein.
   "1) On or about April 11, 1968 you joined and promoted a rival organization and engaged in acts of duel union (sic).
   "2) On or about April 15, 1968 you crossed an established picket line of the Guild and engaged in strike breaking activities.
   "3) You engaged in private collective bargaining for personal gain undermining the collective bargaining activities of the Guild.
   "4) During the 1969 racing season you slandered an officer."
   B. Guild v. Plaintiff Lanfranchi.
   "1) On or about April 11, 1968 you joined and promoted a rival organization and engaged in acts of duel union (sic).
   "2) On or about April 15, 1968 you crossed an established picket line of the Guild and engaged in strike breaking activities.
   "3) You engaged in private collective bargaining for personal gain undermining the collective bargaining activities of the Guild.
   ."4) During the 1969 racing season you slandered an officer."
   C. Guild v. Plaintiff Beaune.
   "1) On or about April 11, 1968 you joined and promoted a rival organization and engaged in acts of duel union (sic).
   "2) On or about April 15, 1968 you crossed an established picket line of the Guild and engaged in strike breaking activities.
   "3) You ·engaged in private collective bargaining for personal gain undermining the

tive Committee would be held on August 3, 1969, to determine the validity of the charges. These letters also informed the plaintiffs of their right to counsel and their right to produce witnesses at the hearing.

Plaintiffs Stein and Lanfranchi notified the Guild that they wished to be represented by Attorney George McInerny of Boston who, at that time, represented Local 841 on other matters. Sometime during the week preceding the hearing, Attorney McInerny requested that the hearing be postponed and solicited a copy of the Guild Constitution. The request for a postponement was denied and a copy of the Constitution was furnished him on the day of the hearing.

All of the plaintiffs, except Mr. Beaune, were present on the day of the hearing. At this time, Mr. Meader indicated that he, too, wished to be represented by Attorney McInerny.

The members of the Executive Committee were the hearing officers. The Guild Business Agent, Joseph Arena, preferred the charges against each of the plaintiffs and served as the prosecutor in those proceedings.

Before the hearing commenced, the Executive Committee and Mr. Arena held a meeting to discuss the procedure that would be followed. There was disputed testimony over what was said during this preliminary meeting. The plaintiffs introduced evidence that at least one of the members of the Executive Committee indicated that those accused were guilty as charged and ought to be punished. Defendant offered rebuttal testimony for the purpose of demonstrating that these remarks did not indicate that the Executive Committee had pre-judged the guilt of the men involved.

After all 31 cases had been presented, the Executive Committee, Mr. Arena, and Mr. Roitman, the defendant's attorney, retired to deliberate. While the testimony regarding the degree of participation of Mr. Arena in these deliberations was in dispute, this court finds that he was present in the room while the Executive Committee deliberated and took an active part in these deliberations. At the conclusion of its deliberations, the Executive Committee made certain findings of guilt as to each of the individuals and imposed fines of varying amounts. Except for the plaintiffs in this suit, no member was fined more than $25.00.[3]

On August 24, 1969, the Guild held a special membership meeting for the pur-

collective bargaining activities of the Guild.

D. Guild v. Plaintiff Meader.
"1) On or about April 11, 1968 you joined and promoted a rival organization and engaged in acts of duel union (sic).
"2) On or about April 15, 1968 you crossed an established picket line of the Guild and engaged in strike breaking activities.
"3) You engaged in private collective bargaining for personal gain undermining the collective bargaining activities of the Guild.
"4) During the 1969 racing season you slandered an officer."

E. Guild v. Plaintiff Grasso.
"1) On or about April 11, 1968 you joined and promoted a rival organization and engaged in acts of duel union (sic).
"2) On or about April 15, 1968 you crossed an established picket line of the Guild and engaged in strike breaking activities."

3. At the disciplinary hearing held on August 3, 1969, the Executive Committee found each of the plaintiffs guilty of the number of charges set forth below after their names and recommended as penalties therefor the imposition of the fines that are also set forth below:

| Plaintiff | Number of Charges Found Guilty of | Amount of Fine Per Guilty Finding | Total Amount of Fine |
|---|---|---|---|
| Stein | 4 | $200.00 | $800.00 |
| Lanfranchi | 3 | 200.00 | 600.00 |
| Beaune | 2 | 25.00 | 75.00 |
| Meader | 2 | 125.00 | 250.00 |
| Grasso | 1 | 25.00 | 25.00 |

pose of considering the ratification of the disciplinary findings and recommendations of the Executive Committee. By a majority vote of those attending, the disciplinary findings and recommendations were ratified. After this vote was taken, at the same meeting, the membership of the Guild passed a motion introduced by Mr. Arena to add a new provision to the Guild's Constitution and By-laws. This provision substantially increased potential sanctions for failure to man picket lines and for crossing authorized picket lines.

By letters postmarked August 30, 1969, the plaintiffs were notified of the sanctions that had been imposed upon them by the defendant. These letters informed the plaintiffs that: "All fines must be paid within thirty days after notification." Except for Mr. Grasso, none of the plaintiffs tendered payment for these fines.

By letter dated September 29, 1969, Mr. Arena notified the president of Suffolk Downs that the five plaintiffs were no longer members in good standing of the Guild and requested that "under the terms of our contract Article II, we are requesting that these individuals no longer be employed in any of the jobs covered by the contract." This letter resulted in the termination of the plaintiffs' employment one day later, on September 30, 1969.

Within fifteen days of their dismissal by Suffolk Downs, unfair labor practice charges were filed by plaintiffs, as well as by Local 841. The Massachusetts Labor Relations Commission issued its decision on June 20, 1970, finding that Suffolk Downs had committed an unfair labor practice under state law by terminating the employment of the plaintiffs before the expiration of the fifteen-day period following its receipt of the letter from the defendant demanding their termination. The charges against the defendant were dismissed without a determination on the merits because of the action that was taken against Suffolk Downs.

## II

This case presents no question of the power of a union to fine its members for strike-breaking activities, nor does it present a question regarding the propriety of an employer discharging employees pursuant to a union security clause. Whether the plaintiffs did or did not commit the offenses with which they were charged is not an issue before this court. What is in issue is whether or not the procedures followed by the defendant in determining the guilt of and imposing sanctions on the plaintiffs comported with the statutory requirements of 29 U.S.C. § 411(a)(5).

Clearly, the procedural safeguards constitutionally required of criminal proceedings need not be built into hearings before a lay tribunal. Gleason v. Chain Service Restaurant Employees' Union, 300 F.Supp. 1241, 1251 (S.D.N.Y.1969), *aff'd* 422 F.2d 342 (2d Cir. 1970). But equally clear is that unions have a statutory obligation to ensure that a member charged with a violation of union rules is "(A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). This court concludes that the defendant failed in its statutory obligation to provide plaintiffs with a "full and fair hearing."

It is a matter of black letter law that an impartial tribunal is the sine qua non of a full and fair hearing. Falcone v. Dantinne, 420 F.2d 1157, 1166 (3rd Cir. 1969). Attorney McInerny testified, and this court so finds, that just before the August 3 hearing commenced, he overheard at least one Executive Committee member, the defendant's President, state that the men charged were guilty and ought to be punished.[4] This statement was made

---

4. This testimony was corroborated, in part, by Mr. Arena's testimony. Mr. Arena testified that the Guild President had expressed his belief that the men were guilty of the

before any evidence was presented. Whether the statement was made in reference to some or all of the charges is immaterial. The mere fact that at least one member of the hearing tribunal, the defendant's President no less, had prejudged the guilt of those accused was inherently prejudicial and deprived them of a full and fair hearing. Falcone v. Dantinne, 420 F.2d at 1161.

■ Another fundamental requirement of a full and fair hearing is that some evidence must be presented on each of the charges of which a member is found guilty. Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L. Ed.2d 210 (1971). No evidence was presented as to plaintiff Beaune who was not present at the hearing. The charges were read and he was defaulted for his failure to appear. Mr. Arena testified that two witnesses who saw the accused cross picket lines were called in before the Executive Committee in each of the thirty cases. Apart from the fact that this testimony was contradicted by his own previous testimony at this trial, it was also contradicted by direct testimony of Mr. McInerny, by previous testimony at the Commission Hearing, and was contradicted by the defendant's minutes of the August 3 proceedings.[5]

Mr. McInerny testified that Stoughton Meader pleaded not guilty, said nothing further and that no other evidence was entered. He also testified that Mr. Lanfranchi pleaded not guilty, that Mr. Lanfranchi was asked why he crossed the picket line and that Mr. Lanfranchi replied that he did not see any picket line. Mr. McInerny testified that no witnesses were produced to contradict or testify against Lanfranchi. Mr. McInerny testified that Mr. Stein entered no plea, protested the manner in which the proceedings were conducted and left the hearing room. The defendant's minutes make no mention of any evidence introduced against Mr. Stein.

On the weight of the credible evidence, this court finds that no evidence was presented as to each of these four plaintiffs during the hearing that was held to determine their guilt.

While the Executive Committee had the Payroll records of the Maintenance Department when the Committee retired to deliberate, these records were not introduced into evidence at the hearing. Moreover, the Payroll records could not substantiate any fact except that the individuals in question worked during the days of the strike. The Records had no probative value as to the charges of promoting dual unionism, of slandering union officials, and of engaging in private collective bargaining for personal gain.

The single most troublesome aspect of the August 3 proceedings is the fact that Mr. Arena, who served as prosecutor, was present and took an active part in the deliberations of the Executive Committee following the hearing. Initially Mr. Arena testified that he was present during the deliberations and that his function was to verify what the Executive Committee members had heard during the hearing. The Joint Statement of Agreed Facts filed before trial stated "Business Agent Arena, who had preferred the charges against the plaintiffs, participated in the deliberation of the Executive Committee." Joint Statement of Agreed Facts, ¶ 21. Despite subsequent efforts by Mr. Arena to blunt the impact of such evidence, this court finds that he was present during the deliberations, and that he took an active part in those deliberations.

■ While lay proceedings cannot be held to the due process standards required in a court of law, it offends notions of fundamental fairness to have

---

slander charge. Mr. McInerny's testimony was further corroborated by the testimony of Stoughton Meader before the Massachusetts Labor Relations Commission at its hearing on November 26, 1969. (Commission Hearing Transcript Vol. 2, p. 76).

5. These minutes specified in some instances, but not all, that witnesses were called. As to each of the plaintiffs, the Guild minutes make no mention of any witnesses that were allegedly called.

the prosecutor present and taking an active part in the deliberations of any fact-finding tribunal. Regardless of how limited his role or how noble his purpose, such a practice permits the possibility of a prosecutor characterizing the evidence presented, or substituting his recollection for that of the hearing officers. It goes without saying that a prosecutor with less than noble motives might subvert such a practice into an occasion for presenting additional evidence, without there being any opportunity for rebuttal by those involved. Finally, but not at all unimportant, is that anyone subject to such a practice could hardly be blamed for doubting that he had been treated fairly and impartially.

What Mr. Arena actually said during those deliberations is not crucial. What is crucial is that he was in fact present and participated in those deliberations. By permitting such a practice, the defendant deprived the plaintiffs of their right to a full and fair hearing. *See* Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).[6]

### III

At the time that these members were fined, defendant's Constitution and By-laws provided that a maximum fine of $25.00 could be imposed on each offense for which a member was found guilty. The fines imposed on four of the plaintiffs (all except Mr. Grasso) were in excess of the amount authorized by the defendant's Constitution. While the amount of these fines *would not necessarily be excessive, if authorized,* the defendant's own internal rules had established that any fine over $25.00 was excessive.

■■ The concept of a full and fair hearing mandates that a union follow its own internal rules. *See* Kiepura v. Local 1091, Steelworkers, 358 F.Supp. 987, (N.D.Ill.1973). Since the disposition of a particular case is an integral part of the fair hearing requirement, this court finds that the defendant violated that requirement by imposing fines in excess of what was permitted by its Constitution. It is important to note that these plaintiffs were determined to be not in good standing and were discharged for their failure to pay these fines, not for their conduct during the strike. It is also noteworthy that the defendant's Constitution was amended after the fines were imposed to increase substantially the fines that could be imposed for future cases of misconduct of this type, clearly demonstrating that the subject fines were ultra vires when imposed.

The plaintiff Grasso was the only one of the plaintiffs to attempt payment of his fine. An undated letter was sent to him notifying him of the action taken by the Executive Committee and of the amount of the fine then owing. Mr. Grasso received and signed for this letter at the Somerville Post Office on September 3, 1969. The letter stated "All fines must be paid within thirty days after notification." On September 30, 1969, Mr. Grasso mailed a money order in the amount of $25.00 to the Guild in full payment of the fine that had been levied against him. Since Mr. Grasso had thirty days from notification, his payment was not due until October 3, 1969.

■ This court, being unpersuaded by any credible evidence to the contrary, applies the presumption that a letter mailed will be received in due course. Federal Ins. Co. v. Summers, 403 F.2d 971, 975 (1st Cir. 1968). Accordingly, this court finds that Mr. Grasso's payment was made timely.[7]

---

6. Mr. Arena had prejudged the guilt of the men involved. This fact is established from testimony that he was the individual speaking to the defendant's President before the hearing, from the fact that he was the person who preferred the charges against the individuals and from the testimony that was given at trial. That the prosecutor has previously determined that the accused is guilty does not deprive the accused of a fair hearing. That this prosecutor participated in the deliberations of the supposedly neutral fact-finding body is contrary to the most basic notions of a full and fair hearing.

7. Note, in this context, that the letter from Mr. Arena to Suffolk Downs indicating that

**450**

Plaintiffs' complaint contained additional allegations of violations of their rights under 29 U.S.C. § 411(a)(5) including lack of specificity in the charges and lack of time to adequately prepare their defenses to these charges. In view of the court's disposition, it is unnecessary to rule on these other matters.

Since the parties had agreed to sever the trial on liability from the question of damages, it is hereby ordered that judgment be entered for the plaintiffs on the issue of liability and that the case be set down for a hearing on the relief to be granted.

So ordered.

the plaintiffs were no longer members in good standing was dated September 29, 1969. Grasso's employment was terminated on September 30, 1969, and unfair labor practice charges had been filed by his fellow plaintiffs on October 2, 1969. All of this occurred before the date on which payment was due. But for the failure of the Guild to comply with the terms of its own notification to Mr. Grasso, his employment with Suffolk Downs would not have been terminated. While Mr. Grasso did not receive a full and fair hearing because of Mr. Arena's participation in the deliberations, defendant's improper conduct in his case is particularly glaring because he was terminated before his payment of this invalid fine was even due.