Robert STEIN et al., Plaintiffs-Appellees,

v.

MUTUEL CLERKS' GUILD OF MASSACHUSETTS, INC., Defendant-Appellant.

No. 76–1399.

United States Court of Appeals, First Circuit.

Argued March 2, 1977.
Decided Aug. 17, 1977.

Harold B. Roitman, Boston, Mass., with whom Segal, Roitman & Coleman, Boston, Mass., was on brief, for defendant-appellant.

Mark G. Kaplan, Boston, Mass., for plaintiffs-appellees.

Before COFFIN, Chief Judge, MOORE * and CAMPBELL, Circuit Judges.

MOORE, Circuit Judge:

The Mutuel Clerks' Guild of Massachusetts, Inc. ("Guild") has for many years been the collective bargaining representative for the approximately 400 employees of the Suffolk Downs Race Track ("Track"). The five Track employees involved in this lawsuit ("appellees") had been Guild members in good standing prior to their expulsion from the Guild in 1969. They subsequently brought an action in federal district court alleging that the manner of their expulsion violated their rights under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 et seq. The district court found merit in their charges of procedural unfairness, 384 F.Supp. 444 (D.Mass.1974), and subsequently awarded them damages. The Guild now appeals. We affirm.

## I.

Prior to 1968, appellees Stein, Lanfranchi, Beaune, Grasso, and Meader were all members of the Track maintenance department and members of the Guild. Local 841 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local") was attempting to separate the maintenance department from the Guild so as to bring it under Local jurisdiction. Each of the appellees made clear in some way his allegiance to the Local in this jurisdictional dispute. For example, in early April, 1968, all five appellees signed union authorization cards attesting their support for the Local's petition to hold a representation election among maintenance department employees, and Lanfranchi went so far as to become a steward of the Local.

Contemporaneously, negotiations for a new collective bargaining agreement between the Guild and the Track broke down. The Guild called a strike for April 15, 1968, which ended in a settlement after two days of picket lines. The appellees admit to having been among approximately thirty maintenance employees who crossed the picket lines to continue working despite the strike.

Not surprisingly, the Guild viewed the actions of the appellees with a jaundiced eye. In July, 1969, the Guild filed intra-union charges against 31 employees of the maintenance department, including all five appellees. The employees were notified of the charges against them by certified letter. The appellees were charged with strike-breaking, promoting dual unionism, and other offenses arising out of the events of April, 1968. Stein, Lanfranchi, and Meader were also charged with slandering an officer of the Guild during 1969. The notification letters informed the employees that a hearing on the charges would be held before the Guild Executive Committee on August 3, 1969, for which they had the right to retain counsel and produce witnesses.

The procedures at the hearing are the focus of this dispute. The district court found that all of the appellees except Beaune were present and that at least Stein, Lanfranchi, and Meader were represented by an attorney, George McInerny. The Guild's Business Agent, Joseph Arena, preferred the charges against the appellees and acted as the "prosecutor" throughout

* Leonard P. Moore, United States Circuit Judge for the Second Circuit, sitting by designation.

the hearing. The other nine members of the Executive Committee were the hearing officers.

Immediately before the hearing, the Executive Committee and Mr. Arena huddled privately to discuss the procedures to be followed. The district court found that at least one Executive Committee member, the President of the Guild, commented at that time that the men charged were guilty and ought to be punished. The district court also found that no substantive evidence was presented at the hearing against either Stein, Lanfranchi, Meader, or Beaune relative to the validity of the charges against them.

At the hearing, Mr. Arena presented the allegations against the appellees. After doing so, he retired to another room to evaluate the charges with the Executive Committee and the Guild's attorney. A focus of this group's discussion was the payroll records of the maintenance department, which had not been presented as evidence during the open hearing. The district court found that Mr. Arena, the "prosecutor", took an active part in these *ex parte* deliberations.

Upon conclusion of its deliberations, the Executive Committee found all of the appellees guilty on most of the charges. Fines in varying amounts were recommended. Stein, found guilty on all four charges against him, was fined a total of $800 and barred from holding any Guild office for three years. Lanfranchi was found guilty of three charges; he was fined $600 and similarly barred from holding any Guild position for three years. Beaune was fined a total of $75 on two counts, and Meader, found guilty of two violations, was fined $250. Grasso apparently pleaded guilty to one count and was fined $25. These fines were recommended, the district court found, despite the explicit constraint of the Guild's constitution, which limited fines to no more than $25 per violation.

On August 24, 1969, the Guild held a membership meeting for the purpose of considering ratification of the recommendations of fines made by the Executive Committee. Of the appellees, only Beaune attended this meeting. The Committee's recommendations were overwhelmingly ratified. The appellees were notified of the vote by letters dated August 30, 1969, which informed them that payment of the fines was due within thirty days. Only Grasso tendered any payment, and his money order was rejected by the Guild as having been received after the thirty-day deadline.

On September 29, 1969, Mr. Arena notified the Track that the five appellees were no longer members in good standing of the Guild. The appellees were terminated the following day in accordance with the union security clause then in effect.

Within the following fortnight, the appellees filed charges against the Track and the Guild with the Massachusetts Labor Relations Commission, alleging that their expulsion and consequent termination violated state labor statutes. On June 30, 1970, the Commission found the Track guilty of violating state law by firing the appellees prior to expiration of a statutorily-required fifteen-day period measured from the Track's receipt of the Guild's letter of September 29, 1969. The charges against the Guild were never reached by the Commission. On July 14, 1974, the appellees obtained offers of reinstatement and compensatory payments measured from June 30, 1970, in settlement of their claims against the Track.

On March 16, 1971, the appellees brought this action in the district court, asserting that the procedures of the Guild in expelling them violated their rights under the LMRDA, 29 U.S.C. § 411. The case proceeded to trial solely on the issue of liability, which was decided in appellees' favor on November 8, 1974, 384 F.Supp. 444. The following May, the damage issue was referred to a Master, who filed a final report on March 30, 1976. The Master awarded appellees compensatory damages for the period from their termination to the Commission's reinstatement order of June 30, 1970, with interest; punitive damages of $1,000 for each appellee; and attorneys' fees equal to one-fourth the amount of compensatory

damages. The Master's report was confirmed by the district court in all respects except the award of punitive damages, and was incorporated into a final judgment on June 29, 1976.

## II.

■ The Guild raises a potpourri of objections to the district court's exercise of jurisdiction in this case. First, it advances the argument that because it is a union only representing persons employed in the horse racing industry, it is not a "labor organization" as defined in 29 U.S.C. § 402, and thus is not subject to the requirements of the LMRDA. Apparently the Guild's contention rests on the assumption that because the National Labor Relations Board ("Board"), pursuant to the National Labor Relations Act, 29 U.S.C. § 164, has declined to exercise its jurisdiction over the horse racing industry, see 29 C.F.R. § 103.3, the Guild is thereby exempt from the provisions of the LMRDA.

However, coverage by the Board is not a sine qua non for jurisdiction under the LMRDA. Section 3(i) of the statute, 29 U.S.C. § 402(i), expressly extends its coverage to include all labor organizations engaged in an "industry affecting commerce", and there can be no doubt here that the Track fits within that definition. Indeed, the Guild revealed by stipulation below that it regularly complies with the reporting requirements established for labor organizations by the LMRDA, 29 U.S.C. § 431(b). The fact of the Board's wholly separate determination not to extend jurisdiction over the horse racing industry under the National Labor Relations Act cannot act to divest the federal courts of the jurisdiction granted them by §§ 3 and 102 of the LMRDA, 29 U.S.C. §§ 402 and 412.

■ The Guild also contends that the various doctrines of abstention, election of remedies, res judicata, and collateral estoppel all should have led the district court to refuse jurisdiction. But a factual basis for presentation of any of these doctrines simply does not exist. The Guild on appeal consistently interprets the 1970 determination of the Massachusetts Labor Relations Commission as somehow having ruled on the issues presented to the district court. Yet the Commission complaint was grounded in state, not federal, law, and the record clearly reflects that the Commission's decision did not in any way reach the merits of the propriety of the Guild's expulsion of the appellees. Because the Commission explicitly dismissed all the allegations against the Guild without any substantive consideration of them, these procedural doctrines now presented by the Guild could not conceivably divest the district court of the jurisdiction clearly authorized by 29 U.S.C. § 412.

■ Moreover, the Guild's contention that appellees have failed to exhaust their state remedies is wholly without merit. Section 102 of the LMRDA, 29 U.S.C. § 412, expressly vests jurisdiction over actions arising under the LMRDA in the district courts. It does not require a potential litigant first to seek redress in state court for violation of this federal statute. Compare, e. g., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

■ In addition, the Guild asserts that this action is precluded by the appellees' failure to present any "defense" at the meeting of the Guild membership on August 24, 1969. The appellees' silence at that meeting, so the argument goes, runs afoul of the requirement of the LMRDA, 29 U.S.C. § 411(a)(4), that union members must exhaust internal union hearing procedures before presenting their grievances in federal court. This argument disregards the undisputed fact of the Guild's representation to the Track on September 29, 1969, that the appellees had "exhausted all of their remedies of appeal within the Guild." App., Vol. II, at 53. Furthermore, it can hardly be argued that the appellees had any internal Guild procedures available to them at the time they brought this action, for they had been entirely expelled from the Guild and were no longer within its jurisdiction.

In sum, none of the numerous jurisdictional contentions of the Guild has any mer-

it. This case was properly heard by the district court.

### III.

The Guild vigorously depicts the heinous nature of the anti-Guild offenses committed by the appellees, arguing that unions must be allowed to retain the power to impose fines upon their members for engaging in conduct inimical to the interests of other union members. However, as the district court accurately explained,

> "[t]his case presents no question of the power of a union to fine its members for strike-breaking activities, nor does it present a question regarding the propriety of an employer discharging employees pursuant to a union security clause. Whether the [appellees] did or did not commit the offenses with which they were charged is not an issue before this court. What is in issue is whether or not the procedures followed by the [Guild] in determining the guilt of and imposing sanctions on [appellees] comported with the statutory requirements of 29 U.S.C. § 411(a)(5)." 384 F.Supp. at 447.

■ The opinion of the district court addresses several separate and independent components of the disciplinary proceedings against the appellees which failed to satisfy the requirement of 29 U.S.C. § 411(a)(5) that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . unless such member has been . . . (C) afforded a full and fair hearing." The court found that the weight of credible evidence supported the appellees' allegation that immediately prior to the hearing on August 3, 1969, the Guild's President, a member of the Executive Committee, privately addressed the Committee, making remarks which revealed that he had fully prejudged the employees' guilt and urged their punishment. While the evidence before the trial judge was in conflict on this point, on this record we cannot reverse the court's finding as "clearly erroneous", Fed.R.Civ.P. 52(a). Having made this factual finding, the court properly deemed the partiality of the Exec-

utive Committee to be a violation of § 411(a)(5), for an unbiased tribunal is a fundamental requisite to a fair hearing. *Kuebler v. Cleveland Lithographers and Photoengravers Local 24–P,* 473 F.2d 359 (6th Cir. 1973); *Falcone v. Dantinne,* 420 F.2d 1157 (3d Cir. 1969); *Gulickson v. Forest,* 290 F.Supp. 457 (E.D.N.Y.1968).

■ The district court also found that Mr. Arena, the Guild's "prosecutor", took an active part in the private deliberations of the Executive Committee that resulted in the recommendations of fines against the appellees. This finding is also not "clearly erroneous" and hence must be upheld, Fed. R.Civ.P. 52(a). And the district court properly held that Mr. Arena's participation in this manner violated § 411(a)(5), for the inherent risk of taint which attaches to a prosecutor's *ex parte* presence as the hearing tribunal reaches its verdict contravenes fundamental canons of procedural fairness. *Cornelio v. Metropolitan Dist. Council of Philadelphia,* 243 F.Supp. 126 (E.D.Pa.1965) (dictum), *aff'd* 358 F.2d 728 (3d Cir. 1966), *cert. denied,* 386 U.S. 975, 87 S.Ct. 1167, 18 L.Ed.2d 134 (1976). Especially is this so when, as here, the maintenance department payroll records were considered by the Committee only during its private deliberations with Mr. Arena.

We need not reach the trial court's findings that the Guild's rejection of Grasso's tender of payment of his fine violated 29 U.S.C. § 411(a)(5), that no evidence was presented in support of the charges, and that fines exceeded the limit established by the Guild's Constitution.

### IV.

■ The Guild also protests the district court's adoption of the Master's report fixing damages. It argues that the appellees failed to mitigate their damages, suggesting that they should have pursued relief for the wrongful fines only after making payment so as to retain their jobs. But this argument misses the mark, for the appellees were forced to seek federal relief as a direct result of the termination which quickly followed the Guild's wrongful pro-

cedures. The district court adopted the Master's finding that the Guild had failed to sustain its burden of showing what, if any, mitigative actions the appellees could reasonably have taken prior to June 30, 1970. With that finding we do not disagree, *see* Fed.R.Civ.P. 52(a). Nor is there merit in the Guild's argument that the Commission's award against the Track precludes the need for any recovery from the Guild. The appellees' acceptance of compensation resulting from the Commission's award, limited as it was to their claims against the Track, in no way acts as an accord and satisfaction of their claims against the Guild. Moreover, there has been no double recovery here, for the report adopted properly found that the Guild need not compensate the appellees for any lost wages which accrued after the decision of the Commission. Finally, the awarding of legal fees to the appellees in the determined percentage of the net compensatory damages was in no way an abuse of the court's discretion. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

## CONCLUSION

After consideration of all the arguments presented by the Guild, the decision of the district court is AFFIRMED.