James R. MYERS, Plaintiff/Appellant,

v.

AFFILIATED PROPERTY CRAFTSMEN LOCAL NO. 44 OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA; International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada; and Don Bernarducci, Defendants/Appellees.

No. 80–5340.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1981.

Decided Feb. 8, 1982.

---

Everett S. Hinchcliffe, Glendale, Cal., for plaintiff/appellant.

Louis Burg, Beverly Hills, Cal., for defendants/appellees.

Before ALARCON and NELSON, Circuit Judges, and THOMPSON *, District Judge.

ALARCON, Circuit Judge:

Appellant, James R. Myers, sued the defendant union, Affiliated Property Craftsmen, Local 44 (Local 44), claiming Local 44 expelled him from the union without providing a "full and fair hearing" as required by the Labor-Management Reporting and

---

* Hon. Gordon Thompson, United States District Judge for the Southern District of California, sitting by designation.

Disclosure Act (L.M.R.D.A.), 29 U.S.C. § 411(a)(5)(C) (1976).[1]

The L.M.R.D.A.[2] provides for federal district court jurisdiction over suits by union members against labor organizations that have allegedly infringed certain rights protected by the Act. 29 U.S.C. § 412 (1976).

The district court ruled in favor of Local 44. We hold that Myers was not afforded a full and fair hearing, and therefore reverse.

## I. FACTUAL BACKGROUND

### A. *The Executive Board Proceedings*

Myers, the president of Local 44, was accused of soliciting a bribe of $100 from a prospective member of the union. In return for the $100, Myers allegedly agreed to advance the member's seniority in violation of union procedures.

Myers was tried before the Executive Board of Local 44. Myers argues that he did not receive a full and fair hearing, as required by 29 U.S.C. § 411(a)(5) (1976), because at least one member of the Executive Board, Ronald Joe Peck, was improperly influenced by Don Bernarducci, the Union's Secretary-Treasurer who acted as the prosecutor in this matter, and Milton W. Olsen, in meetings that took place after the hearing, but before the Executive Board rendered its guilty verdict against Myers. Olsen, under Bernarducci's questioning at the hearing, stated that Myers admitted receiving $100 from Klasen, but there was "[n]ever a clear explanation of why he accepted the hundred dollars...."

The prospective member who allegedly bribed Myers testified at the union hearing that he gave $100 to Ernest Klasen who immediately handed the money to Myers.

Myers testified at the hearing that he received $100 from Klasen in order to buy a camper shell for Klasen's truck. Klasen corroborated Myers' testimony regarding the purpose for which the money was given to Myers.

Myers never admitted his guilt at the union hearing. He denied admitting guilt to Bernarducci and Olsen. No one testified at the hearing that Myers admitted guilt.

### B. *The District Court Proceedings*

Peck testified in district court that Bernarducci and Olsen told him, that Myers had "taken some money for a favor" and responded affirmatively when asked if Bernarducci and Olsen told him that Myers admitted having done the "act that was alleged against him." Bernarducci was asked in district court if he had told Peck that Myers "admitted guilt" to him, Bernarducci answered "yes." Peck testified that he believed Bernarducci and Olsen when they told him that Myers admitted taking money for a favor.

Peck was scheduled to be chairman of the Executive Board for Myers' hearing. Either Bernarducci or Olsen, Peck could not remember who, asked Peck to remove himself from the chairmanship of the proceedings because the chairman could not vote on Myers' guilt or innocence. Peck was urged to appoint L. L. Linnean, a member of the Executive Board, to the chairmanship because Bernarducci and Olsen "weren't sure of how Mr. Linian [sic] would vote" regarding Myers' guilt. Peck removed himself from the chairmanship of the Myers hearing and voted. The Executive Board unanimously voted Myers guilty.[3]

---

**1.** 29 U.S.C. § 411(a)(5) (1976) states:

*Safeguards against improper disciplinary action*

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

**2.** The L.M.R.D.A. is also known as the Landrum-Griffin Act.

**3.** The exact number of voting members of the Executive Board is not certain. The number of Board members listed as "present" at the Executive board hearing is 17, including the nonvoting chairman. Olsen, a member of the Executive Board, was listed as present, but was excused from voting. Peck, inexplicably, was not listed as present, though he asked questions at the hearing and voted. Peck testified in district court that he believed 18 Executive

As stated above, Peck's testimony that Bernarducci told him that Myers admitted guilt was corroborated by Bernarducci's testimony in district court. Peck's testimony that either Bernarducci or Olsen asked him to relinquish the chairmanship to make a guilty vote more likely was unchallenged.

Local 44's constitution provides for an appeal to the general membership. A general membership meeting was scheduled for Myers' appeal, but was not held due to the lack of a quorum. Myers' appeals to the International President and the International Executive Board were both "denied".

## II. DISCUSSION

This court must determine whether these facts constitute a denial of the right to a full and fair hearing in accordance with 29 U.S.C. § 411(a)(5) (1976).

The courts have had some difficulty deciding what the "full and fair hearing" provision of the L.M.R.D.A. requires. The full and fair hearing requirement has been compared to "traditional concepts of due process of law." *Pawlak v. Greenawalt*, 464 F.Supp. 1265, 1271 (M.D.Pa.1979). *See also NLRB v. Allis-Chalmers Manufacturing Co.*, 388 U.S. 175, 194, 87 S.Ct. 2001, 2013–14, 18 L.Ed.2d 1123 (1967); *Howard v. United Association of Journeymen and Apprentices*, 560 F.2d 17, 21 (1st Cir. 1977). There is agreement, however, that a union disciplinary hearing need not incorporate the same protections found in criminal proceedings. *Ritz v. O'Donnell*, 566 F.2d 731, 735 (D.C. Cir.1977).

Biased or tainted trial committees have been a recurring problem in union disciplinary hearings. An unbiased or untainted finder of fact is fundamental to a full and fair hearing and procedural due process. *Falcone v. Dantinne*, 420 F.2d 1157, 1166 (3rd Cir. 1969). Union trial committees typically consist of members of the same local. Accordingly, the triers of fact can be expected to have some knowledge of the events in question obtained outside of the disciplinary hearing. *See* Etelson & Smith, *Union Discipline Under the Landrum-Griffin Act*, 82 Harv.L.Rev. 727, 749 (1969). There are limits, however, to the personal knowledge the courts have tolerated from the judges of union disciplinary proceedings. For example, witnesses to the offenses in question cannot sit on the union's trial committee. *Kiepura v. Local Union 1091, United Steelworkers*, 358 F.Supp. 987, 991 (N.D.Ill.1973). The Second Circuit in *Rosario v. Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1243 (2nd Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), held that union "disciplinary charges cannot be heard upon remand [from the district court] for a new trial by those who previously heard the charges." Similarly, the court in *Tincher v. Piasecki*, 520 F.2d 851, 856 (7th Cir. 1975), held that introducing into evidence a prior invalid decision which was vacated by the district court, deprived the union members of an "impartial, open-minded tribunal."

These decisions indicate a concern that a union member not be found guilty based on evidence not presented at the disciplinary hearing.

When a member of a trial committee has admitted to prejudging the guilt of the accused before the hearing, the courts have not hesitated to rule there was no full and fair hearing as required by the L.M.R.D.A. In *Falcone v. Dantinne*, 420 F.2d 1157 (3d Cir. 1969), one member of a three member "trial body" prejudged the guilt of the accused union member. The prejudgment was the result of attendance at an informal settlement hearing. The *Falcone* court held that one member's prejudgment deprived the accused of a "full and fair hearing, free of prejudgment, as mandated by the Act [L.M.R.D.A.]." *Id.* at 1161. In *Stein v. Mutuel Clerks' Guild of Massachusetts, Inc.*, 560 F.2d 486 (1st Cir. 1977), one member of the nine-member committee that was hearing the charges against the accused union

---

Board members were present at the time the Myers vote was taken. This point was not contested by the parties, and we hold that the number of voting members, whether 15, 16, 17 or 18, does not affect our decision.

members stated that the men were guilty in a pre-hearing meeting. The accused were found guilty by the committee even though no substantive evidence was presented at the hearing. The First Circuit found the union members were expelled in violation of the L.M.R.D.A.'s full and fair hearing provision. *Id.* at 491.

■ Though noteworthy differences exist, the *Stein* and *Falcone* cases are closely analogous to the present case. The district court found in *Stein* that the union presented no substantive evidence against the accused union members. This alone may have warranted a finding for the accused union members. The appellate court, however, expressly rested its holding upon the district court's finding that the committee president prejudged the guilt of the accused. 560 F.2d at 491. In *Falcone* there were only three members voting on the union trial body, whereas there were as many as 18 [4] voting on Local 44's Executive Board. The *Falcone* court, however, stressed that the trial body must be "free of prejudgment," 470 F.2d at 1161, and based its decision on the fact that "one member of the Trial Board prejudged the case...." *Id.* at 1167. The fact that there were additional voting members in this case does not reduce the potential for a denial of a full and fair hearing when there is one prejudiced member.

We refuse to conjecture as to the actual effect of Peck's taint on the deliberations of the Executive Board. Peck testified he believed that Myers admitted his guilt to Bernarducci and Olsen. History has demonstrated that one persuasive trier of fact can turn the tide against an accused. Furthermore, Bernarducci's and Olsen's successful effort to remove Peck from the non-voting chairmanship so that he would be in a position to cast a guilty vote demonstrates a conscious effort to stack the deck against Myers and to deny him a fair hearing.

We recognize the policy of allowing unions to govern their own affairs, and we review the factual findings of union disciplinary hearings deferentially. *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.Ed.2d 110 (1971). Such deference to the findings of fact of union tribunals, however, is predicated upon the accused receiving a full and fair hearing in accordance with the L.M.R.D.A., 29 U.S.C. § 411(a)(5)(C) (1976).[5]

■ Local 44 contends that Myers' intra-union appeals cured any alleged defects of the initial hearing. A trial *de novo* is required to remedy a disciplinary hearing which was not a full and fair hearing under the L.M.R.D.A. *See Perry v. Milk Drivers' and Dairy Employees' Union, Local 302*, 656 F.2d 536, 539 (9th Cir. 1981). Myers was not aware of Peck's contact with Bernarducci and Olsen until after the intra-union appeals. Myers, therefore, did not waive his right to challenge the fairness of the disciplinary hearing. Failure to raise this issue in the union proceedings "should not be construed as a waiver of such a vital safeguard as the guaranty of an impartial tribunal." *Falcone*, 420 P.2d at 1162.

## III. CONCLUSION

For the reasons stated above, we reverse the district court's judgment in favor of Local 44 and hold for Mr. Myers. We do not rule on Myers' guilt or innocence—we simply rule that Local 44 violated § 411(a)(5)(C) by not affording Myers a full and fair hearing prior to his expulsion from the union.

We remand this case to the district court. The district court, in turn, shall remand this case to Local 44, instructing the union to provide a new hearing for Myers before impartial members who did not participate in the original proceedings against Myers. *See Rosario v. Ladies' Garment Cutters'*

---

4. *See supra* note 3.

5. The Ninth Circuit has already held that such deference does not extend to condoning union discipline which is imposed in violation of the

first amendment. *Bise v. International Bhd. of Elec. Workers*, 618 F.2d 1299, 1305, n.5 (9th Cir. 1979), *cert. denied*, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980).

*Union, Local 10,* 605 F.2d 1228, 1243 (2nd Cir. 1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).

GORDON THOMPSON, Jr., District Judge, dissenting:

Myers was afforded a full and fair hearing. Union hearings and appeals should not be required to meet the same standards of fairness and due process that are required in criminal trials.

The courts should not run the internal affairs of unions. There is no showing that a different result should occur upon remand. I would affirm.